UNITED STATES of America, Appellee,

v.

**Richard TAXE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Ronald TAXE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Geraldine GONZALES, Appellant.**

UNITED STATES of America, Appellee,

v.

**Richard WARD, Appellant.**

**Nos. 74–3094, 74–3471 and 74–3153.**

United States Court of Appeals, Ninth Circuit.

June 8, 1976.

Rehearing and Rehearing En Banc Denied Aug. 23, 1976.

---

Donald Saltzman (argued), of Miller, Glassman, & Browning, Beverly Hills, Cal., and Richard L. Rosenfield (argued), of Flax & Rosenfield, Los Angeles, Cal., for appellants.

Chester L. Brown, Asst. U.S. Atty. (argued), Los Angeles, Cal., for appellee.

Before HUFSTEDLER, WRIGHT and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

Four defendants were charged with multiple counts involving "record piracy". All four were convicted of willful infringement of copyrights for profit, 17 U.S.C. §§ 1(f), 101(e), 104, and conspiracy, 18 U.S.C. § 371. In addition, defendant Richard Taxe was convicted of mail fraud, 18 U.S.C. § 1341. Along with other issues, their combined appeal challenges the 1971 Sound Recording Amendment to the Copyright laws, Act of October 15, 1971 (Pub.Law 92–140, 85 Stat. 391), as further amended by the Act of December 31, 1974 (Pub.Law 93–573, 88 Stat. 1873).

Richard Taxe directed the operation. Stereo records of eight-track stereo tape recordings manufactured by major record companies were purchased on the open market from retail outlets. With specially adapted electronic tape equipment, the commercially acquired records or tapes were re-recorded with changes in one or more of the following respects: the recording speed was increased or decreased; reverberation or echo was introduced; certain portions of the musical sounds were eliminated or reduced in volume; and additional sounds were produced by synthesizers. The eight-track stereo tapes thus created were thereafter sold to the public.

Sales were promoted through national advertising. The advertisements presented the tapes as authentic. The jackets for the individual tapes described the enclosed recordings as "Today's hits as done by your favorite artists. Custom simulated by Sound 8 singers and musicians."

Ronald Taxe was the shipping foreman. Rick Ward was the sales director. Geraldine Gonzales worked in production.

The defendants present a number of issues on appeal, beginning with an attack upon the statute as vague and overbroad.

## I.

■ The 1971 Sound Recording Amendment extends limited copyright protection to sound recordings fixed after February 15, 1972. 1 M. Nimmer, The Law of Copyright § 35, at 246.3 n. 3, and § 109.20 (1975). The copyright owner acquires the exclusive right to duplicate but this does not bar independent fixation by another of other sounds similar to those copyrighted. 17 U.S.C. § 1(f). The defendants assert that the terms "sound recording", "duplicate", and "independent fixation" are unconstitutionally vague.

■ Sound recordings are works that result from the fixation of a series of sounds. 17 U.S.C. § 26. Fixation, as defined by the Copyright Office, occurs when a complete series of sounds is first produced on a final master recording that is later reproduced in published copies. 37 C.F.R. § 202.15a(b). Duplication, while not statutorily defined, incorporates the rights to copy and record and can be fleshed out by reference to them. 1 Nimmer, § 109.21. In view of the definition of fixation, the statutory language is not so vague that

men of common intelligence must necessarily guess at its meaning.[1] *See Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *see also Shaab v. Kleindeinst,* 345 F.Supp. 589 (D.D.C. 1972).

## II.

When instructing the jury, the trial judge defined "independent fixation" as a separate performance, expressly excluding re-recording, even with changes. He went on to instruct that since a new fixation by re-recording with modifications is not an independent fixation, it constitutes infringement. Appellants claim this instruction both misstated the law and removed from the jury a matter within its exclusive province. The government supports the part of the instruction paraphrased above, but objects to language later in the instruction directing the jury to compare tapes and to find no infringement if the appellants' final product was no longer recognizable as the same performance originally recorded.

■ We believe the instruction went beyond the law insofar as it purported to characterize any and all re-recordings as infringements, but the subsequent inclusion of a comparison test permitted the jury to consider "substantial similarity", and cured any error in the earlier part of the instruction.[2] *See* 1 Nimmer at § 109.21.

---

1. Other constitutional challenges to the 1971 amendments to the Copyright Act have also been rejected. *United States v. Bodin,* 375 F.Supp. 1265 (W.D.Okl.1974) (17 U.S.C. §§ 101(e) and 104 do not deny free expression, and §§ 1(f) and 101(e) do not deny due process); *Heilman v. Levi,* 391 F.Supp. 1106 (E.D. Wis.1975) (prohibition of "unauthorized use" in 17 U.S.C. § 101(e) is not unconstitutionally vague).

2. To be distinguished is production of a "substantially similar" work without any actual sound duplication. Professor Nimmer believes that such a "mere imitation" would not infringe the § 1(f) right to "duplicate the sound recording in a tangible form that directly or indirectly captures the actual sounds fixed in the recording." 1 M. Nimmer, The Law of Copyright § 109.2–109.21. The copyright owner's right to reproduce the sound recording is limited to

recapture of the original sounds, but that right can be infringed by an unauthorized re-recording which, despite changes in the sounds duplicated, results in a work of "substantial similarity". This holds even though the sound recording copyright is not expressly vested with the right to produce derivative works. Whether or not the copyright owner has that right, he can protect his right of reproduction from persons who produce an audibly equivalent work by re-recording. Indeed, appellants' characterization of their tapes as derivative works is both erroneous and harmful to their interests.

"* * * [A] work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work. It is saved from being an infringing work only because the borrowed or copied material was

■ Appellants next object to the absence of a detailed instruction on willfulness under the statute. The term was mentioned three times in the infringement instruction and defined in the course of the general instructions. There was no reversible error in the instructions.

### III.

■ Appellants contend that, even if facially constitutional, the statute as applied by the Registrar of Copyrights fails to give fair notice of what is copyrighted. The Registrar permits an album to carry a single notice, yet individual bands (songs) on that album may not be eligible for copyright. Appellants say that mingling of protected and unprotected matter in a single copyright fails to give fair notice and protects uncopyrightable matter.

The copyright of an item containing protectible and unprotectible parts is expressly contemplated in 17 U.S.C. § 3:

"The copyright provided by this title shall protect all the copyrightable component parts of the work copyrighted * * *."

Individual songs are component parts of an entire record album. The copyright of an album protects only the copyrightable songs (those fixed after February 15, 1972). The single notice is adequate since, for $2.00, anyone can obtain a copy of the copyright certificate and determine which songs are protected. See 17 U.S.C. § 215.

■ As for the certificates, appellants charge that these documents are intolerably vague in spelling out the dates of fixation. Every application for a certificate requests the dates by direction to the applicant to designate "new matter". Such "matter" includes sound recordings first fixed after February 15, 1972. This designation is adequate.

■ Appellants also object to the instruction that certificates of copyright are prima facie evidence of the dates of fixation. The governing statute provides:

"[s]aid certificate[s] shall be admitted in any court as prima facie evidence of the facts stated therein * * *." 17 U.S.C. § 209. In *Rohauer v. Friedman,* 306 F.2d 933 (9th Cir. 1962), this court accepted and applied the statute. *Rohauer* was decided when sound recordings were not yet eligible for copyright, and fixation was not one of the certificate's disclosed facts. However, the statute's broad and unequivocal language suggests that the date of fixation is within its terms. While the certificates are hearsay when offered to prove the truth of the date thereon, the certificates should be deemed at least prima facie accurate about the dates of fixation until the contrary appears. There was no known reason for them to be inaccurate. Appellants offered no proof, and have suggested no basis for attacking the validity of any particular fixation dates. Absent a concrete showing of lack of trustworthiness, the admission of the certificates and the attendant instruction was proper. *Cf.* 28 U.S.C. § 1733, and Fed.Rules of Evid. 803(8).

### IV.

■ The trial judge determined that the copyright notice of a sound recording should be understood to apply to the individual bands or songs. The United States, therefore, submitted twenty six songs as infringed. Appellants argue variance in that the indictment charged infringements of entire albums. Individual components (bands or songs) of a larger work (an album) may or may not be protectible. 17 U.S.C. § 3. The copyright claimed for an album can be infringed by unauthorized duplication of any copyrightable component part. By instructing as he did, the trial judge did not narrow the indictment; he simply correctly determined the nature of the sound recording copyright.

### V.

■ Appellants also charge that the judge functioned as a prosecutor, provided too little time to review jury instructions,

taken with the consent of the copyright owner of the prior work, or because the prior

work has entered the public domain." 1 M. Nimmer, The Law of Copyright § 39, at 167.

and unfairly limited the appellants' time to present their case. None of these charges is supported by the record. The cases cited (*United States v. Harris,* 501 F.2d 1 (9th Cir. 1974); *United States v. Hoker,* 483 F.2d 359 (5th Cir. 1973); and *Blunt v. United States,* 100 U.S.App.D.C. 266, 244 F.2d 355 (D.C.Cir. 1957)) involved conduct significantly more blatant. As for the time pressures, the United States took four weeks to present its case while the defendant took only about two days. But much of the first four weeks included defense activities during the government's case. It is meaningless to count time the way appellants would have us count it in this case. From the earliest stages of the trial, the judge indicated his desire to keep it moving. In a complex case with many issues and parties, such exhortations are frequently necessary. The court did not prevent a full exposition of defense argument. Appellants were not prejudiced.

### VI.

In the course of preindictment investigation, government agents had the appellants' tape warehouse under surveillance on January 22, 1974. That evening, eight persons were observed hurriedly loading hundreds of boxes into two trucks. When the trucks departed, the agents followed them. The trucks separated for awhile, then reunited. The agents believed the drivers were attempting to determine whether they were being followed. Appellants were aware that the FBI was investigating their activities. When the trucks subsequently stopped, the agents approached and identified themselves. The drivers turned out to be appellants Richard and Ronald Taxe. After advising the Taxes of their rights (but not arresting them), the agents requested permission to search the trucks. The Taxes refused; they also refused to drive the trucks to an FBI lot. Subsequently, however, they moved the trucks to a site near the FBI building. They refused to surrender the keys, and departed. Thereafter, the agents broke the locks and searched the vehicles. They found 80,000 tapes, of which 19,000 were of albums pro-

duced after February 15, 1972. None of these tapes was admitted as evidence, but an agent testified about the search and the prosecutor referred to that testimony in his arguments to the jury.

The agents may have lacked sufficient probable cause to search the trucks. *See United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). If they did, it was error to permit a witness and the prosecutor to mention the search. However, on the whole record in this case we believe that the error, if any, was harmless. There were so many other tapes tending to prove the government's case that the reference to the tapes in the trucks was immaterial.

### VII.

Appellants next claim that they were entitled to a hearing to test the accuracy of the affidavit underlying the search warrants issued for certain premises. Defendants may sometimes challenge the veracity of an affidavit. *United States v. Harris,* 501 F.2d 1, 5–6 (9th Cir. 1974); *United States v. Damitz,* 495 F.2d 50, 54 (9th Cir. 1974). Richard Taxe had standing to raise this claim. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). In the affidavit, an FBI agent stated he believed that illegal tapes would be found on Taxe's business premises. He did not mention the earlier truck search or that he had seen no illegal tapes on an earlier tour of the premises guided by Richard Taxe. The trial court ruled that these omissions were immaterial, and we agree. Appellants also argue that the agent made an intentionally false statement. *United States v. Luna,* 525 F.2d 4 (6th Cir. 1975); *United States v. Carmichael,* 489 F.2d 979 (7th Cir. 1972). The record contains no substantial showing of falsity. *United States v. Bolton,* 458 F.2d 377, 378 n. 6 (9th Cir. 1972). Indeed, the agent's belief appears to have been well founded.

### VIII.

In argument to the jury, the prosecutor (a) referred to appellant Richard Taxe as a

"fraud", "scavenger", "parasite", and "professional con-man"; (b) stated that Taxe was "orchestrating everyone" so his lawyers could "get up here and feed you a line"; (c) commented on the substance of a post-indictment conversation without counsel in which appellants Richard Taxe and Ward allegedly solicited one Jones to lie to the prosecution; (d) noted that appellants Richard and Ronald Taxe did not consent to a search of their trucks by FBI agents; (e) in describing the case as limited to the issue of willfulness, queried, "Why else would [the appellants] have forced the government to present the many witnesses and exhibits regarding all of those other aspects of this trial * * *"; and (f) commented on out-of-court statements by coconspirators who did not testify.

■■■■■ The above described trial conduct must be considered in the context of the entire trial. *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The trial judge instructed that the prosecutor's argument was not evidence. The "scavenger" and "parasite" characterizations were based on evidence that Taxe was profiting at the expense of copyright owners. The "fraud" description was supported by evidence of misleading representations made to customers. The "professional con-man" label lacks specific evidentiary foundation but does not appear to have been much of an exaggeration, and was certainly not so prejudicial as to have deprived Taxe of a fair trial. *Compare Hall v. United States,* 419 F.2d 582 (5th Cir. 1969).

■■■■■ The government's unprofessional remarks on the conduct of the defense are troublesome. They suggest for the jury an inference of conspiracy from defense strategy and reflect on the sincerity of the defense counsel. *See Wagner v. United States,* 263 F.2d 877 (5th Cir. 1959). Appellant Geraldine Gonzales alone testified at trial that Richard Taxe had paid her bail and was paying for her legal fees but the defense could be fairly described as team-oriented. Reasonable comment on these matters was proper, but the denigration of

counsel was neither supported by the evidence nor reasonable. This misconduct by an overanxious prosecutor, however, was not sufficiently prejudicial to warrant reversal. *See United States v. Klugman,* 506 F.2d 1378 (8th Cir. 1974); *see also United States v. Perez-Martinez,* 525 F.2d 365 (9th Cir. 1975).

IX.

■■■■■ Appellants Richard Taxe and Ward had two conversations with one Jones. In the first, they allegedly solicited Jones to represent that the tapes he had obtained through appellants' business were plainly lawful. Jones reported this alleged solicitation and, at the government's behest, phoned Taxe and Ward, who discussed the earlier conversation in the absence of counsel. Both conversations took place after appellants had been formally charged. The phone conversation was taped, and when Taxe denied on cross-examination soliciting Jones, a transcript of the tape was admitted for impeachment.

Appellants object to the prosecutor's noting that conversation, and now claim, for the first time, that admission of the transcript violated appellants' Fifth and Sixth Amendment rights. Questioning in the absence of counsel after formal charges by a government "agent" and introduction of the incriminating statements obtained are disapproved by *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In *Massiah,* the statements were used to prove guilt directly; here, the conversation was used only to impeach. Under *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the Jones transcript would be admissible in a subsequent trial for obstruction of justice. The use of the transcript to impeach at the current trial is not clearly governed by either *Hoffa* or *Massiah.* Though it involves alleged criminality, there is no suggestion of entrapment and it does not appear that the prosecution was building its case-in-chief through Jones. *See United States v. Merritts,* 527 F.2d 713 (7th Cir. 1975). With solicitation the charge, no potentially legiti-

mate client-counselor communication is in issue. The focus in *Massiah* (self-incrimination on the existing charges) is also absent. Accordingly, use of the transcript to impeach was not error. *See Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), and *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

■ With the transcript properly in evidence, the prosecutor's remarks were fair comment. The cases on which appellants rely (*Hall v. United States, supra; Jones v. United States,* 119 U.S.App.D.C. 213, 338 F.2d 553 (1964); and *Wagner v. United States, supra*) are all distinguishable.

### X.

■ The prosecutor's comments on the Taxes' refusal to consent to a search of their trucks was misconduct. *See Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). But, again, we believe that a subsequent curative instruction and the facts as a whole indicate that the error was harmless.

### XI.

■ Appellants' remaining challenges to prosecutorial comments are without merit. While the prosecutor commented on out-of-court statements by co-conspirators who did not testify, those statements were properly ·in evidence, *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), and comment was permissible. As for describing the case as reduced to the issue of willfulness and then asking rhetorically why the appellants forced the government to present evidence and witnesses on other

issues, the prosecutor was only tangentially referring to exercise of the right to jury trial and the comment did not penalize that right. *See generally United States ex rel. Macon v. Yeager,* 476 F.2d 613 (3d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973) (comment on right to counsel reversible error on the facts).

### XII.

■ Appellants relied heavily on advice that Richard Taxe received from an attorney that his re-recording process would not infringe copyrights. The attorney so testified at trial. When instructing the jury on the weight to be accorded advice of counsel, the court described such advice as "no defense".[3] That description does not require reversal. *Bisno v. United States,* 299 F.2d 711 (9th Cir. 1961), *cert. denied,* 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962). The court made it clear that the advice should be considered in determining whether appellants' actions were "willful". This was a correct instruction on a disputed question of fact.

Appellants assert a number of other alleged grounds for reversal.[4] We have studied them all carefully. It was a long trial. It dealt with novel and complex legal questions. The trial was not free of error. It would be surprising if it were. It was a fair trial. The defendants were convicted, not by prosecutorial overzealousness or judicial error, but by overwhelming evidence of their guilt.

Taxe attacks the constitutionality of 28 U.S.C. § 1918(b), a general statute that permits the court to order a convicted defendant to pay the costs of prosecution. We do not reach the constitutional ques-

---

**3.** The court instructed:

"Advice of counsel is not a defense to any crime charged in this indictment. It is only a circumstance which should be considered by you on the issue of intent, i. e., in determining whether a defendant was acting in good faith and lacked the requisite criminal intent."

**4.** Besides the objections already considered on the infringement and advice-of-counsel instructions, appellants object to the court's instruc-

tions on credibility of witnesses and conspiracy. In addition, they claim prejudice in the alleged erroneous admission into evidence of testimony and numerous tapes, copyright certificates, air-freight bills, and checks which first came in on counts against Richard Taxe for mail fraud and interstate transportation of stolen property (ITSP). Appellants argue that the evidence was irrelevant, particularly in light of the dismissal in the course of the trial of the ITSP counts.

tions on the present record because the district court's imposition of the costs of prosecution must be vacated on other grounds. The imposition of costs based on his conviction upon twenty counts charging violations of 17 U.S.C. §§ 1(f), 101(e), and 104, and upon one count charging him with conspiracy to violate these sections, is foreclosed by 17 U.S.C. § 116, which provides:

"In all actions, suits, or proceedings under this title, *except when brought by* or against the *United States* or any officer thereof, full costs shall be allowed, and the court may award to the prevailing party a reasonable attorney's fee as part of the costs * * *." (Emphasis added.)

▮▮▮▮ The district court did not purport to segregate costs of prosecution attributable to the five mail fraud counts from such costs attributable to the copyright counts. We have no way in which to separate imposition of costs excepted by Section 116 from those that could possibly have been imposed for the mail fraud counts. Even in respect of the latter, a serious statutory problem arises because the district court imposed the $1,000 maximum statutory fine, authorized by 18 U.S.C. § 1341, for each of the five mail fraud counts. Section 1341 does not authorize the assessment of costs in addition to a fine as do some other criminal statutes. If the assessment of the costs of prosecution here, as it was in *United States v. Ducharme,* 505 F.2d 691 (9th Cir. 1974), is "tantamount to increasing that [maximum] fine" (*id.* at 692), the imposition of costs exceeded the maximum fine authorized by Congress for the offense. The *Ducharme* question can be resolved on remand.

The order imposing costs of prosecution upon Taxe is vacated and that portion only of the judgment is remanded to the district court; the judgment in other respects is affirmed.