Peter BURNETT and Daniel C. Ryan,
Petitioners/Appellants,

v.

MUNICIPALITY OF ANCHORAGE,
Respondent/Appellee.

Raymond ROOP, Petitioner/Appellant,

v.

STATE OF ALASKA,
Respondent/Appellee.

No. 86–3747.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1986.

Decided Dec. 30, 1986.

D. Scott Dattan, Anchorage, Alaska, for petitioners/appellants.

James F. Wolf, Municipal Prosecutor, Scott Jay Sidell, Municipality of Anchorage, Jeffrey W. Cole, Asst. Atty. Gen., Anchorage, Alaska, for respondent/appellee.

Before GOODWIN, WALLACE and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The three appellants seek federal habeas corpus relief pursuant to 28 U.S.C. § 2254 from their state court convictions for refusal to submit to chemical breath tests after being stopped for driving while intoxicated (DWI). The district court, in a well-reasoned decision, 634 F.Supp. 1029, denied the writs, holding that neither the Fourth nor the Fourteenth Amendment of the United States Constitution had been violated. We affirm.

## FACTS

The facts are undisputed. Peter Burnett, Daniel Ryan and Raymond Roop were lawfully stopped and arrested on separate occasions for DWI, Burnett and Ryan by Anchorage police officers and Roop by an Alaska state trooper. All three were warned of the implied consent law [1] and the sanctions for refusal to submit to a chemical test of their breath.[2] All three peace-

---

**1.** Alaska Statute 28.35.031 provides, in relevant part:

*Implied Consent.* (a) A person who operates or drives a motor vehicle in this state ... shall be considered to have given consent to a chemical test or tests of the person's breath for the purpose of determining the alcoholic content of the person's blood or breath if lawfully arrested for an offense ... committed while the person was operating or driving a motor vehicle ... while intoxicated.

The Anchorage implied consent law, AMC 9.28.-021, is basically the same as AS 28.35.031.

**2.** Alaska Statute 28.35.032 provides, in relevant part:

*Refusal to submit to chemical test.* (a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test under AS 28.35.031(a), after being advised by

the officer that the refusal will, if that person was arrested while operating or driving a motor vehicle for which a driver's license is required, result in the denial or revocation of the license or nonresident privilege to drive, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle ... while intoxicated, and that the refusal is a misdemeanor, a chemical test shall not be given, except as provided by AS 28.35.035.

. . . . .

(g) Upon conviction of a person under this section, the court shall impose a minimum sentence of imprisonment of not less than 72 consecutive hours and a fine of not less than $250. . . .

fully refused to submit. Burnett and Ryan were charged with violations of the Anchorage Municipal Code for DWI, and for refusing to submit to the chemical test. Roop was charged with violations of Alaska law for DWI, and for refusing to submit to the chemical test.

Burnett and Roop subsequently pled *nolo contendere* to the refusal charges, preserving under a state procedure their right to appeal their convictions. In both cases, the DWI charges were dropped. Burnett and Roop received fines and jail sentences. Ryan went to trial on both charges, was acquitted of DWI, but convicted on the refusal charge.

The appellants appealed their convictions, arguing that the law under which they were convicted violated their rights under the Fourth and Fourteenth Amendments of the United States Constitution. Burnett and Roop exhausted their state remedies. Ryan is excused from doing so on the basis that further resort to state forums would have been futile. *See Sweet v. Cupp,* 640 F.2d 233, 236 (9th Cir.1981). This court has jurisdiction pursuant to the district court's certification of probable cause. 28 U.S.C. § 2253.

## STANDARD OF REVIEW

When the facts are undisputed, the denial of a habeas corpus petition is reviewed *de novo.* *Johnson v. Lumpkin,* 769 F.2d 630, 632 n. 2 (9th Cir.1985).

## DISCUSSION

Appellants' first argument on appeal is that a person's consent, in a constitutional sense, is necessary as a matter of law to validate the search of his lungs and the seizure of his breath pursuant to a breathalyzer examination. They contend that they therefore have a constitutional right to refuse such an examination and that they cannot be punished for exercising that right. Appellants' argument, however, is incorrect.

It is not disputed that the administration of a breath test is a search within the meaning of the Fourth Amendment and therefore subject to the requirements of that amendment. *See Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966). One requirement is that of reasonableness. *Id.* at 771, 86 S.Ct. at 1836. Another requirement is the warrant requirement, which is subject to a few specific and well-delineated exceptions. *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). One such exception is a search incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969); *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. at 1835–36.

In *Schmerber,* the Court held that compelling the defendant to provide blood samples for proving his blood alcohol percentage did not violate his constitutional right against unreasonable searches and seizures where there was probable cause to arrest him for driving under the influence of intoxicating liquor. The *Schmerber* Court rejected the claim that the seizure of blood was an unreasonable search and seizure, and identified three requirements deemed critical to the reasonableness of the intrusion in question. First, there must be a "clear indication" that in fact the desired evidence will be found. Second, the test chosen to measure defendant's blood alcohol level must be a reasonable one. Third, the test must be performed in a reasonable manner. 384 U.S. at 770–71, 86 S.Ct. at 1835–36.

Furthermore, the *Schmerber* Court rejected defendant's contention that a warrant must be obtained before blood samples can be taken. According to the court:

> The officer in the present case ... might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the

The Anchorage law regarding sanctions for refusing to submit to a chemical test, AMC 9.28.- 022, is virtually identical to AS 28.35.032.

destruction of evidence[.]" We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system ... Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest. (citations omitted). *Id.*

■ In the present case, the taking of breath samples by the police meets the "reasonableness" requirements of *Schmerber*. As in *Schmerber*, the Alaska law enforcement officials had probable cause to believe petitioners were under the influence of alcohol; therefore, there existed a clear indication that a breath test would show petitioners had consumed significant quantities of alcohol. Likewise, the method of blood alcohol testing used is a reasonable one. In addition, the breath test sought by the Alaska law enforcement officials is clearly a less objectionable intrusion than the compulsory blood samples allowed under *Schmerber*. It is clear then that the breathalyzer examination in question is an appropriate and reasonable search incident to arrest which appellants have no constitutional right to refuse.

Appellants' argument regarding consent and cooperation is misplaced. The argument confuses a legal concept, "consent," with a factual concept, "cooperation." The two are substantially different. Consent in the constitutional sense is only required where the defendant has a legal right to refuse. As per *Schmerber*, a legally arrested defendant has no constitutional right to refuse a breathalyzer examination. True, he may fail to cooperate, but failure to cooperate does not create a legal right where it would otherwise not exist. *See McCracken v. State*, 685 P.2d 1275, 1278 (Alaska Ct.App.1984) (Singleton, J., concurring).

■ The other and closely related argument on appeal is that by criminalizing the breathalyzer refusal, the state has attached an unconstitutional condition to the privilege of using the state's highways, thereby violating the equal protection clause of the Fourteenth Amendment. It is true, as appellants argue, that the government may not impose conditions which require the relinquishment of constitutional rights. No rights were relinquished here, however, because there is no Fourth Amendment right to refuse a breathalyzer examination.

■ Appellants do not allege any other fundamental rights violation, nor that the statutes create a suspect classification. Absent these arguments, the appropriate review of the implied consent legislation is the rational relationship test. *United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973). Under this test, the legislation is entitled to a presumption of validity and will be upheld unless the varying treatment of different groups or persons is so unrelated to any legitimate purpose that the court can only conclude that the legislature's actions were irrational. *Parham v. Hughes*, 441 U.S. 347, 352, 99 S.Ct. 1742, 1746, 60 L.Ed.2d 269 (1979). Two questions must be answered in determining whether a challenged classification is rationally related to achievement of a legitimate state purpose: (1) Does the legislation have a legitimate purpose, and (2) Was it reasonable for the lawmakers to believe that use of the classification would promote that purpose? *Western & Southern Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981).

■ The Alaska Supreme Court has determined that the implied consent statute and its sanctions were intended to provide an exclusive method for obtaining direct evidence of a suspect's blood-alcohol content. *Anchorage v. Geber*, 592 P.2d 1187, 1192 (Alaska 1979). The statute was intended to deter refusals to submit to chemical tests and to ensure that those who do refuse will gain no benefit from their refusal. *Jensen v. State*, 667 P.2d 188, 190 (Alaska Ct.App.1983). Both the United States Supreme Court and the Alaska Supreme Court have recognized the value of breathalyzer evidence in determining

whether someone is too intoxicated to drive safely. *Mackey v. Montrym,* 443 U.S. 1, 19, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979) (characterizing the test as one "that provides the most reliable form of evidence of intoxication for use in subsequent proceedings"); *Wester v. State,* 528 P.2d 1179, 1181–83 (Alaska 1974), *cert. denied,* 423 U.S. 836, 96 S.Ct. 60, 46 L.Ed.2d 54 (1975). The *Mackey* Court noted several ways in which a state's interest in public safety might be advanced by a refusal statute:

> First, the very existence of ... the statute serves as a deterrent to drunk driving. Second, it provides strong inducement to take the breath-analysis test and thus effectuates the Commonwealth's interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings. Third, in promptly removing such drivers from the road, the ... statute contributes to the safety of public highways.

443 U.S. at 18, 99 S.Ct. at 2621. The purpose of the legislation at issue here is beyond a doubt legitimate, and the method chosen to advance that purpose is reliable, reasonable, and useful in providing for public safety.

**CONCLUSION**

Appellants' basic argument is that they have been deprived of their right to be free of unreasonable searches. Nothing in the Alaska statutes here at issue deprives them of that right, or otherwise burdens it. A motorist who has been stopped for DWI and who wishes to vindicate himself has two choices under the law. He may take the test as the state prefers him to do. If he does, and the evidence obtained is favorable to him, he will gain his prompt release with no charge being made for drunk driving. *See Mackey v. Montrym,* 443 U.S. at 19, 99 S.Ct. at 2621. If the evidence is unfavorable, he may challenge the government's use of that evidence by attacking the validity of the arrest. If he does not take the test, he can still challenge the

evidence of his refusal by once again attacking the validity of the arrest. Either way, he remains fully capable of asserting the only Fourth Amendment right he possesses: the right to avoid arrest on less than probable cause. Thus, no improper condition has been placed on the exercise of appellants' rights under the Fourth Amendment.

Appellants' equal protection argument is without merit. The legislation clearly serves a legitimate state interest. All drivers lawfully stopped are treated equally, and further, from the perspective of the Fourth and Fourteenth Amendments, those drivers are treated no differently from other sorts of persons suspected of committing criminal acts. This being so, appellants' convictions for refusing to take the breathalyzer examination are in accord with the requirements of the United States Constitution.

Accordingly, the denial of federal habeas corpus relief is

AFFIRMED.