954 F.2d 727
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Calvin W. STEPHENS, Petitioner-Appellant,
v.
CITY AND COUNTY OF SAN FRANCISCO; and their attorney John
K. Van De Kamp, Attorney General of California,
Respondent-Appellee.
 No. 90-15913.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 14, 1991.*
Decided Feb. 13, 1992.
 
 Before JAMES R. BROWNING, FARRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Calvin W. Stephens, a California state prisoner, appeals the district court's denial of his petition for writ of habeas corpus. Stephens was convicted of second-degree murder and is serving a sentence of 15 years to life imprisonment. We have jurisdiction under 28 U.S.C. § 2253 and we affirm.
 
 DISCUSSION
 
 3
 I. District Court's Review of Stephens' Petition
 
 
 4
 Stephens first contends he was denied due process of law when the district court reviewed his second habeas petition (No. 86-0903-DLJ) without recognizing that the second petition included by reference the claims set forth in his first petition (No. 84-7044-SW). Stephens claims the district court "unquestionably accepted the [State's] characterization of [his] arguments."
 
 
 5
 We reject this claim. Our review of the record convinces us that the district court considered the allegations set forth in Stephens' first habeas petition in ruling on the second. The district court noted in an order dated January 14, 1988, that it should have denied the claims set forth in Stephens' first appeal for failure to exhaust, but that Stephens had subsequently exhausted his state judicial remedies and that the court was considering the claims set forth in the second habeas petition. In addition, the district court's order denying Stephens' second petition considered each alleged ground of error as set forth in the first petition.
 
 II. Delay in Processing Petition
 
 6
 Stephens next contends the district court's delays of thirty-eight months and forty-five months, respectively, between the time he filed his two habeas petitions and the time the district court dismissed the actions violated his right to due process. Relying on Carter v. Thomas, 527 F.2d 1332 (5th Cir.1976) (per curiam), in which the Fifth Circuit held that a district court procedure for handling habeas petitions that routinely resulted in delays of up to twenty months stated a claim upon which relief could be granted, Stephens asserts that his second petition should be remanded for an evidentiary hearing to determine whether the delays are purposeful and whether they are part of a policy of discrimination.
 
 
 7
 We disagree. Carter was a class action lawsuit against the clerk of the district court seeking to force a change in court procedure. There is no authority for the proposition that a federal court's delay in processing a habeas corpus petition filed by a state prisoner, even if it reaches constitutional dimensions, could require that an otherwise valid state conviction be set aside.
 
 III. Prosecutorial Misconduct
 
 8
 Stephens contends that, during closing arguments, the prosecutor made several remarks that were so prejudicial as to deny him a fair trial. Stephens claims the prosecutor improperly accused him of fabricating an alibi, of suborning perjury, that the prosecutor engaged in improper prosecutorial vouching, and that the prosecutor urged the jury that it had an obligation other than weighing the evidence.[1]
 
 
 9
 Under California law, a claim of prosecutorial misconduct is waived if the defendant does not object to it at trial. People v. Green, 27 Cal.3d 1, 27 (1980), overruled on other grounds by, People v. Hall, 41 Cal.3d 826 (1986). The claim will only be considered by a reviewing court if the harm is incurable and resulted in a miscarriage of justice. Id. at 20-21.
 
 
 10
 Stephens' trial counsel did not object to any of the alleged improper statements. In reviewing Stephens' direct appeal under this standard, the California Court of Appeals concluded that the claims of prosecutorial misconduct had not been preserved for appeal and, thus, resolved the misconduct claims on the basis of a state procedural default. The California Supreme Court dismissed Stephens' appeal without comment.
 
 
 11
 Ordinarily, when a state law default prevents the state court from reaching the merits of a federal claim, review in federal court is barred. Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977). In Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991), the Supreme Court determined that when a federal court in a habeas proceeding must determine whether an unexplained order rests primarily on federal law the following presumption should apply: "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Id. at 2594. The presumption is not irrebuttable and may be refuted if the habeas petitioner is able to present strong evidence that the state court reached the merits of a federal claim. Id. at 2595-96.
 
 
 12
 There is no evidence in this case to suggest that any California court reached the merits of Stephens' prosecutorial misconduct claims. Consequently, there is no reason why the presumption would not apply here. In applying the presumption, we must assume the California Supreme Court denied review because of a procedural default, thereby barring consideration of Stephens' prosecutorial misconduct claims by the federal courts.
 
 
 13
 Stephens cannot obtain habeas relief on procedurally barred claims unless he demonstrates cause and actual prejudice. See Wainwright, 433 U.S. at 90-91. In order to grant habeas relief for prosecutorial misconduct, the prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Because of the procedural default, Stephens must point to something that "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in the original).
 
 
 14
 Stephens declares that there was "cause and prejudice" because of the alleged prosecutorial misconduct. He cites to specific incidents of alleged misconduct, each purportedly constituting an error of constitutional dimension. We will discuss each of Stephens contentions of misconduct in turn.
 
 
 15
 a. Fabricated Alibi
 
 
 16
 Stephens contends the prosecutor improperly argued Stephens attempted to fabricate an alibi by stating that he made a phone call to Henley's friend, Debra McFeron, and inquired where Henley was after she was already dead. Stephens argues the record does not support this inference. We disagree and conclude this was an acceptable inference to be drawn from the evidence submitted. There was evidence from which the jury could find that the phone call occurred after the killing.
 
 
 17
 Stephens claims that the prosecutor improperly sought to discredit his son's testimony by arguing Stephens had coached him on the content of his testimony. We find the prosecutor's comment to be a permissible reminder that the testimony of Stephens and his son, regarding what they were going to do with Henley's body, was inconsistent.
 
 
 18
 b. Prosecutorial Vouching
 
 
 19
 Stephens claims the prosecutor improperly "vouched" for certain witnesses by repeating their testimony that Henley was planning to break up with Stephens and then saying, "And I'm sure that's what happened." The prosecutor's comments in this regard did not constitute prosecutorial misconduct of a constitutional dimension.
 
 
 20
 Prosecutors are prohibited from "plac[ing] the prestige of the government behind the witnesses" through personal assurances of their veracity or suggest that "information not presented to the jury supports the witness's testimony." United States v. Roberts, 618 F.2d 530, 533 (9th Cir.1980). In context, however, the prosecutor's statement was permissible. He stated in relevant part:
 
 
 21
 [T]he reason that [the witnesses'] testimony is admitted for you is so that you could gather from what [Henley] said and infer from what she told her friends that when she went to the defendant's house that night she was going to follow through on her intention of telling him that the relationship was over. And I am sure that's what happened.
 
 
 22
 Rather than improper vouching, it appears the prosecutor was only exhorting the jury to view the testimony in a particular light. With the statement, the prosecutor urged the jury to believe Henley attempted to break up with Stephens that particular night. The statement certainly did not prejudice Stephens' entire trial and result in a denial of due process.
 
 
 23
 Stephens' challenge to the prosecutor's description of his demeanor is unavailing. As the district court noted, the Ninth Circuit has held that references to the defendant being a "scavenger," "parasite," and "professional" were not so prejudicial as to have deprived the defendant of a fair trial. United States v. Taxe, 540 F.2d 961, 968 (9th Cir.1976), cert. denied, 429 U.S. 1040 (1977). Here, the prosecutor's reference to Stephens as "deserv[ing] to be enshrined in the Actors Guild" and implying he shed false tears did not deprive Stephens of a fair trial.
 
 
 24
 Finally, Stephens contends the prosecutor improperly urged the jury to reach a "true" and "just" verdict and to thereby "do a good job." Specifically, the prosecutor exhorted the jury to return a true and just verdict so that "we can all say this was a good jury, they did a good job." Additionally, he told the jury that it had a duty to Henley, her friends, and her family to let them "know that you took the time to see that her death did not go by at least unpunished, that there was some meaning to her life." We conclude that while the prosecutor strayed in to an impermissible area with these statements, it did not result in a constitutional violation. It was incumbent upon Stephens to show that the alleged misconduct so infected his trial with unfairness as to result in a denial of due process. He has not met this burden. Even when considered together, the prosecutor's comments did not deny due process to Stephens.
 
 IV. Introduction of Prejudicial Evidence
 
 25
 Stephens also contends his right to a fair trial was violated by the admission of evidence of his prior conviction. We reject this contention. The tape and transcript of Stephens' statement to the police included references to his previously having been in jail and not being able to legally possess a gun. The tape and transcript were introduced into evidence. Under these circumstances, the district court properly concluded that while Inspector Falzon's statement was harmful to Stephens, it was not so prejudicial as to deny him a fair trail in light of the other references to these facts already in the record.
 
 
 26
 Stephens argues the district court's analysis of this issue was flawed. He maintains that when considering the other references to Stephens' past bad acts, the district court incorrectly assumed the information from the tape and transcript were properly admissible. According to Stephens, portions of the tape and transcript relating to his past criminal acts were rendered inadmissible by the stipulated waiver of his right to be tried on the charge of being an ex-felon in possession of a gun, and that his counsel was ineffective in not objecting to their admission.
 
 
 27
 We disagree with Stephens' characterization of this claim. Essentially, Stephens is making an ineffective assistance of counsel claim on the basis of this alleged error. If Stephens' counsel's conduct in failing to object to this evidence was so deficient as to be ineffectual, Stephens' habeas petition should be granted on that ground. Stephens' argument on this issue, therefore, is properly considered as a claim of ineffective assistance of counsel and will be discussed below.
 
 V. Ineffective Assistance of Counsel
 
 28
 Stephens asserts he was denied his Sixth Amendment right to effective assistance of counsel. Stephens sets forth four separate grounds upon which he bases his claim of ineffective assistance.
 
 
 29
 To succeed on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Conduct falls below an objective standard of reasonableness when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Courts must indulge a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Prejudice is shown if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 
 
 30
 Stephens claims that competent counsel would have objected to the transcript of his taped interview as well as the references to his past criminally contained in both the tape and transcript. Presumably, the purpose of waiving jury trial on the charge of possession of a firearm by an ex-felon was to keep this information from the jury. By not objecting to those portions of the tape and transcript in which Stephens referred to his past criminal conduct, Stephens' trial counsel permitted this evidence to go to the jury.
 
 
 31
 Nevertheless, Stephens has failed to show prejudice as a result of this error. The evidence of his guilt based on the testimony of the coroner, Dr. Ferrer, and Inspector Moses overwhelmingly supported a finding of guilty. The rather isolated references to Stephens' past criminal conduct were not so serious as to deprive him of a constitutionally fair trial.
 
 
 32
 Stephens also contends his counsel's failure to employ experts demonstrates incompetency. We disagree. A claim of ineffective assistance of counsel may be dismissed on the grounds of lack of sufficient prejudice if that is the easiest course. Id. at 697. Here, as the district court noted, Stephens has not identified any prejudice from the lack of an expert witness for the defense. He does not inform the court of the "effective rebuttal evidence" an expert would have provided.
 
 
 33
 Next, Stephens argues that his counsel failed to secure the admission of crucial evidence. Stephens asserts that his counsel should have secured the admission of a page of the coroner's protocol that he used to attempt to impeach Dr. Ferrer, and also should have secured the admission of a laboratory request made by Inspector Falzon that mentioned "powder markings on [the victim's] person."
 
 
 34
 These claims must be rejected as well. Stephens' trial counsel read the relevant portions of both the protocol and the laboratory request into the record in an attempt to impeach Dr. Ferrer and Inspector Falzon. Stephens has not demonstrated prejudice by his counsel's failure to secure their admission into evidence.
 
 
 35
 Finally, Stephens declares his trial counsel demonstrated incompetence by failing to object to the alleged instances of prosecutorial misconduct. As discussed, most of the comments by the prosecutor during closing argument were permissible. Whether the remaining statements were in error are close questions. Even assuming it was unreasonable for trial counsel to fail to object to certain comments by the prosecutor during closing argument, we conclude Stephens was not denied a fair trial, and the result was reliable.
 
 
 36
 The evidence presented at trial overwhelmingly supported a finding of guilty. The judgment of the district court denying Stephens' petition for a writ of habeas corpus is affirmed.
 
 
 37
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We refuse to reach arguments raised by Stephens for the first time on appeal. See International Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985)