976 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Jolene PHILLIPS, Defendant-Appellee,
UNITED STATES of America, Plaintiff-Appellee,
v.
Jolene PHILLIPS, Defendant-Appellant.
 Nos. 91-10478, 91-10479.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 17, 1992.
Decided Sept. 21, 1992.
 
 Before WIGGINS, O'SCANNLAIN and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jolene Phillips appeals from a jury verdict finding her guilty of involuntary manslaughter and assault. The United States appeals the sentence imposed upon Phillips after conviction. Both parties filed a timely notice of appeal, and this court has jurisdiction pursuant to 28 U.S.C. § 1291 (1988). We affirm the conviction but vacate the sentence and remand for resentencing.
 
 BACKGROUND
 
 3
 In January 1990, Phillips was driving a pickup truck after she had been "partying" and had consumed a substantial amount of alcohol. Phillips drove off the road, and the truck rolled, killing one passenger and seriously injuring others. In December 1990, Phillips was indicted for second degree murder and assault. At trial, the government produced evidence obtained from the hospital that treated Phillips following the accident. This evidence showed that Phillips' blood alcohol content at the time of the accident was approximately .25. The government also used Phillips' pre-arrest refusal to submit to a blood test as evidence of her guilt at trial. The jury returned a guilty verdict for involuntary manslaughter and assault resulting in serious bodily injury. In sentencing, the district court departed downward and reduced Phillips' sentence from 41 to 6 months based on a finding that her drunk driving was aberrant behavior. This appeal followed.
 
 DISCUSSION
 I. The Manslaughter Instruction
 
 4
 In reviewing jury instructions, the standard applied in this circuit is "whether, considering the charge as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988); see also United States v. Beltran-Rios, 878 F.2d 1208, 1214 (9th Cir.1989).
 
 
 5
 In reviewing jury instructions, we give the trial judge "substantial latitude" so long as the instructions "fairly and adequately cover the issues presented." ... "Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing they constitute an abuse of the trial court's discretion."
 
 
 6
 United States v. Bordallo, 857 F.2d 519, 527 (9th Cir.1988) (citations omitted), amended, 872 F.2d 334, cert. denied, 493 U.S. 818 (1989). Taken as a whole, the district court's jury instructions are not erroneous.
 
 
 7
 Phillips argues that the district court "never once [instructed the jury] that recklessness is the required actus reus for the crimes [sic] of involuntary manslaughter." However, Phillips concedes that the jury was instructed on the required mental state or mens rea. Thus, Phillips' argument is based in part on her counsel's inability to distinguish the actus reus from the mens rea.
 
 
 8
 The district court properly instructed the jury that, to convict Phillips of involuntary manslaughter, the jury had to find Phillips committed a criminal act (actus reus), with a specified mental state (mens rea), which resulted in a certain result. To find a criminal act, the jury had to find that "the defendant engaged in a willful act of becoming voluntarily intoxicated and driving in that condition." To find the requisite mental state, the jury had to find that, "in the circumstances existing at the time, the defendant either knew that her conduct was a threat to human life or was done with reckless disregard for human life...." The jury also had to find that "Rueben Ray King was killed as a result." Thus, the district court gave a proper instruction for each element.
 
 
 9
 Phillips' misunderstanding of the mens rea requirement for manslaughter may stem from United States v. Keith, 605 F.2d 462 (9th Cir.1979). In Keith, this court held that the Government must prove both gross negligence and knowledge of such gross negligence to satisfy the mens rea element for manslaughter.
 
 
 10
 [T]he Government must prove: (1) that the defendant acted with "gross negligence," defined as "wanton or reckless disregard for human life;" and (2) that the defendant had actual knowledge that his conduct was a threat to the lives of others, or had knowledge that his conduct was a threat to the lives of others, or had knowledge of such circumstances as could reasonably be said to have made foreseeable to him the peril to which his acts might subject others.
 
 
 11
 Id. at 463 (citations omitted). The district court incorporated this mens rea requirement into jury instruction number fourteen by simply requiring knowledge that the defendant acted with reckless disregard for human life. The court instructed the jury that the government must prove that
 
 
 12
 in the circumstances existing at the time, the defendant either knew that her conduct was a threat to human life or was done with reckless disregard for human life or the defendant had knowledge of such circumstances as could reasonably be said to have made foreseeable to her the peril to which her acts might subject others.
 
 
 13
 Phillips appears to argue that the district court eliminated the requirement of gross negligence by requiring knowledge of such gross negligence. We find that the gross negligence requirement is not eliminated when it is incorporated into the knowledge requirement. It is well settled that actual knowledge is a higher level of culpability and is harder to prove than gross negligence or recklessness. See Paul H. Robinson & Jane A. Grall, Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond, 35 Stan.L.Rev. 681, 694-697 (1983). Thus, no jury could ever find that the defendant had actual knowledge of her own gross negligence unless she was indeed grossly negligent. The logic is inescapable; a defendant cannot have actual knowledge of her own gross negligence unless she was grossly negligent. Moreover, while explaining the difference between second degree murder and manslaughter in jury instruction number fifteen, the district court made it clear that "[i]nvoluntary manslaughter involves reckless conduct constituting disregard for human life."
 
 
 14
 In short, there is nothing wrong with the district court's jury instructions. As a whole, they clearly outline the actus reus and the corresponding mens rea and result. The district court's instructions made it clear that Phillips could be convicted only if her acts were reckless, and the jury easily could have found that Phillips acted recklessly. See United States v. Loera, 923 F.2d 725, 728 (9th Cir.) ("A rational trier of fact could have found that Loera's conduct in driving while in a state of intoxication showed a reckless disregard for the safety of others."), cert. denied, 112 S.Ct. 164 (1991).
 
 II. Refusal to Supply a Blood Sample
 
 15
 Phillips argues that the refusal to supply a blood alcohol sample before any arrest cannot be used as evidence at trial because the use of such evidence violates the Fourth Amendment's protections against unreasonable searches and seizures. Whether such evidence is admissible is a question of law that we review de novo. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc) (issues of law reviewed de novo), cert. denied, 469 U.S. 824 (1984).
 
 
 16
 It is well settled that a breath test or blood sample test is a search that is subject to the requirements of the Fourth Amendment. See Schmerber v. California, 384 U.S. 757, 766-72 (1966); Burnett v. Municipality of Anchorage, 806 F.2d 1447, 1449 (9th Cir.1986). It is also well established that "refusal to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing." United States v. Prescott, 581 F.2d 1343, 1351 (9th Cir.1978); United States v. Taxe, 540 F.2d 961, 969 (9th Cir.1976), cert. denied, 429 U.S. 1040 (1977); United States v. Thame, 846 F.2d 200, 206-07 (3d Cir.), cert. denied, 488 U.S. 928 (1988). Thus, "where an underlying right to refuse such a blood test is present, it would be improper to draw adverse inferences from failure of the accused to respond to a request for a blood test because the accused would thereby be penalized for exercising his rights to refuse the test." Newhouse v. Misterly, 415 F.2d 514, 518 (9th Cir.1969) (discussing Schmerber, 384 U.S. at 765 n. 9 and Miranda v. Arizona, 384 U.S. 436, 468 n. 37 (1966)), cert. denied, 397 U.S. 966 (1970); see Prescott, supra.
 
 
 17
 The government cites South Dakota v. Neville, 459 U.S. 553 (1983), and Deering v. Brown, 839 F.2d 539, 541 (9th Cir.1988) for the proposition that a defendant's refusal to submit to a blood test to show consciousness of guilt is admissible. However, Neville and Deering are inapposite. Both cases involve defendants who were lawfully under arrest when the blood test was requested. Thus, neither Neville nor Deering was "a case where the State has subtly coerced respondent into choosing the option it had no right to compel...." Neville, 459 U.S. at 563. The government has the right to compel a blood sample after or contemporaneous with a lawful arrest, and the defendant has no Fourth Amendment right to refuse such a test. See Schmerber, 384 U.S. at 767-72; United States v. Harvey, 701 F.2d 800, 805 (9th Cir.1983). In short, the cases cited by the government do not address the refusal to submit to a blood test when the defendant has a Fourth Amendment right to refuse such a test.
 
 
 18
 The Fourth Amendment's prohibition of unreasonable searches and seizures requires that there be probable cause for arrest before a defendant forfeits his right to refuse a blood test. Schmerber, 384 U.S. at 768-70. Unless there is probable cause and a valid arrest, a defendant's refusal to submit to a blood test cannot be used as evidence of guilt. See Burnett, 806 F.2d at 1451 (a defendant may challenge evidence of his refusal to submit to a breathalyzer test by attacking the validity of the arrest).
 
 
 19
 Although there may have been probable cause for arrest in this case, the government does not contend that Phillips' refusal to supply a blood sample was contemporaneous to a valid arrest. Therefore, the district court erred by admitting this refusal as substantive evidence. Nevertheless, because there was ample evidence of Phillips' intoxication presented at trial, the error was harmless. See Taxe, 540 F.2d at 969 (reversal is not necessary when the record as a whole indicates that comments on the refusal to consent to a search were harmless); Thame, 846 F.2d at 207 (the use of the defendant's refusal to consent to a search as evidence of guilt did not require reversal because there was considerable other evidence of guilt). Therefore, we affirm despite the district court's error.
 
 III. The Indictment
 
 20
 Phillips argues that the district court erred by refusing to give the indictment to the jury. According to Phillips, the court should have given the jury an actual copy of the indictment showing the date of the indictment so that the jury would know that the prosecutor took almost eleven months to return the indictment. A district court's refusal to provide a copy of the indictment to the jury is reviewed for an abuse of discretion. United States v. Murray, 492 F.2d 178, 193 (9th Cir.1973), cert. denied, 419 U.S. 942 (1974).
 
 
 21
 Although the district court provided the jury with the exact charging language of the indictment, a copy of the indictment with the actual date was withheld from the jury. Phillips argues that this prevented her from presenting to the jury her argument that the pre-indictment delay in this case violated her due process rights. However, pre-indictment delay does not violate the Due Process Clause absent a showing that the delay was motivated by the government's desire to gain some tactical advantage through stale evidence or by a reckless disregard of the circumstances. United States v. Lovasco, 431 U.S. 783, 788-96 (1977). Because Phillips provided no evidence that the pre-indictment delay was so motivated, the district court did not abuse its discretion by refusing to provide an actual copy of the indictment to the jury.
 
 IV. Downward Departure
 
 22
 The government appeals Phillips' sentence of six months. The government concedes that the district court had the authority to depart downward based upon her drunk driving being an act of aberrant conduct. See United States v. Takai, 941 F.2d 738, 743 (9th Cir.1991); United States v. Dickey, 924 F.2d 836, 838-39 (9th Cir.), cert. denied, 112 S.Ct. 383 (1991). However, it argues that the district's finding that Phillips' drunk driving was aberrant behavior was clearly erroneous. See United States v. Floyd, 945 F.2d 1096, 1099 (9th Cir.1991) (factual findings supporting a departure are reviewed for clear error), amended, 956 F.2d 203 (1992).
 
 
 23
 The government's argument has some merit. It presented credible evidence that Phillips' extremely high blood alcohol level coupled with her ability to function with so much alcohol in her body indicates that she has a high tolerance for alcohol often achieved by experienced heavy drinkers. Indeed, the district court ordered Phillips to complete a substance abuse program and prohibited her from drinking alcohol during her supervised release.
 
 
 24
 On the other hand, evidence that Phillips had been abusing alcohol does not necessarily show that Phillips had been a drunk driver before. Although the government shows that Phillips had a background of drinking, it does not show that she also had a background of being irresponsible by driving while intoxicated. There was testimony that Phillips was a model student who behaved responsibly and obeyed rules and regulations. The district court could have found from this testimony that Phillips did not have a history of drunk driving. In short, although the government has a strong argument, we cannot say that the district court's finding of aberrant behavior was clearly erroneous. Therefore, we affirm the district court's finding.
 
 
 25
 The government's final argument is that, even if a finding of aberrational behavior is not clearly erroneous, the court's downward departure was unreasonable. We review the reasonableness of a departure for an abuse of discretion. Id. at 1099 & n. 1. United States v. Lira-Barraza, 941 F.2d 745, 751 (9th Cir.1991) (en banc) requires that departures be calculated "in light of the structure, standards and policies of the [Sentencing Reform] Act and Guidelines." The government argues that the district court abused its discretion by failing to provide an analogy to the Act or Guidelines that would support a level 12 downward departure.
 
 
 26
 Lira-Barraza requires "a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines." Id.; see United States v. Streit, No. 90-10509, slip op. 5701, 5715 (9th Cir. May 19, 1992) ("The district court must explain the reasoning for both the direction and degree of its departure in sufficiently specific language to allow us to conduct a meaningful review."). Departures must be guided, "so far as possible, by articulated analogies to other provisions of the guidelines." Streit, slip op. at 5725. In this case, the Guidelines specifically recognize that they do not deal with or account for aberrant behavior. U.S.S.G. Ch. 1, Pt. A, intro. 4(d); Takai, 941 F.2d at 742. Thus, the district court followed Lira-Barraza by departing on the basis of aberrant behavior and reducing the offense level by 12. The government, however, argues that (1) reducing the offense level by 1 would have been more appropriate and that (2) the district court erred by failing to provide an analogy to the Guidelines or a reasoned explanation of the degree of the departure.
 
 
 27
 It is unclear whether a Guideline analogy exists which could be applied to an aberrant behavior departure. The Guidelines do not deal with or consider "single acts of aberrant behavior that still may justify probation at higher offense levels through departure," U.S.S.G. Ch. 1, Pt.A, intro. 4(d), and there is no recognized "analogy." Indeed, it appears that the Act and Guidelines provide little specific guidance in determining the exact degree of a departure for aberrant behavior, and analogies by the district court may not aid this court in reviewing the degree of the court's departure. Nevertheless, the requirements of Lira-Barraza are clear. The district court must support its departure with a reasoned explanation--"some reasonable, articulated methodology consistent with the purposes and structure of the guidelines." Streit, slip op. at 5725. Without a reasoned, detailed explanation of the departure, the purpose of the Guidelines, uniformity in sentencing, may be seriously undermined. Because the district court did not explain how it arrived at a 12 level departure, we must remand for resentencing.
 
 CONCLUSION
 
 28
 The only error at trial--the use of Phillips' pre-arrest refusal to submit to a blood test as evidence of guilt--was harmless. Therefore, we affirm the jury verdict. However, because the district court did not provide a reasoned explanation of the extent of the departure, we vacate Phillips' sentence and remand the case for resentencing.
 
 
 29
 The conviction is AFFIRMED, the sentence is VACATED, and the case is REMANDED for resentencing.
 
 FERNANDEZ, Circuit Judge, dissenting:
 
 30
 In my opinion, the district court committed reversible error when it substituted "the defendant engaged in a willful act of becoming voluntarily intoxicated and driving in that condition," for the first element of involuntary manslaughter: "the defendant committed with gross negligence the action causing death...." United States v. Keith, 605 F.2d 462, 463 (9th Cir.1979). That was not cured when the district court added that in order to return a guilty verdict the jury must also find: "defendant either knew that her conduct was a threat to human life or was done with reckless disregard for human life or the defendant had knowledge of such circumstances as could reasonably be said to have made foreseeable to her the perils to which her acts might subject others." (Emphasis added).
 
 
 31
 The net result was that the jury could find Phillips guilty of involuntary manslaughter by determining, for example, that she willfully became intoxicated, drove in that condition, and had knowledge of circumstances that could reasonably have made the peril to others foreseeable to her. That is an improper legal theory, because the trial judge, in effect, told the jury that her drunk driving is, ipso facto, gross negligence. He erroneously took that question from the jury. See, e.g., United States v. Benally, 756 F.2d 773, 776 (10th Cir.1985) (Drunk driving death. District court erred by, in effect, telling jury that drunk driving was gross negligence.); United States v. Pardee, 368 F.2d 368, 375 (4th Cir.1966) (Wrong way driving death. District court erred by, in effect, telling jury that wrong way driving was gross negligence.); cf., Schwendeman v. Wallenstein, No. 91-35626, slip op. 8917, 8922-23 (9th Cir. July 7, 1992) (Instructing jury that it could infer recklessness from excessive speed alone was constitutional error in vehicular assault case.)
 
 
 32
 Even if one can find an alternate legal theory that would save the instruction as a whole, which I doubt, the invalid theory taints this verdict. See Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).
 
 
 33
 Finally, the mention of recklessness in a later instruction did not, to my mind, alleviate the difficulty. That instruction was for the purpose of distinguishing involuntary manslaughter from second degree murder. It did not change the fact that the elements the jury was to look at for the purpose of determining involuntary manslaughter were defectively stated.
 
 
 34
 I sympathize with the apparent view of the district judge and the majority that drunk driving is grossly negligent--reckless--behavior. As I see it, people who behave like Phillips did are a menace and should be dealt with accordingly. In this case, that is true despite the fact that laws regarding what blood alcohol level constitutes drunk driving vary from place to place and are ever changing. Nevertheless, we should not encourage the recrudescent tendency of courts to replace the recklessness element of manslaughter with their own notions of what acts are reckless by definition. Jurors, not judges, have the power and duty to speak for the community on that issue based upon the facts of the case before them.
 
 
 35
 Thus, I respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3