In re John William FINDLEY,
III, Debtor.

John William Findley, III, Appellant,

v.

State Bar of California, Appellee.

BAP No. NC–07–1187–KJuMk.
Bankruptcy No. 04–41110.
Adversary No. 06–04180.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued on Jan. 24, 2008.

Submitted after Post–Argument Briefing
on March 17, 2008.

Filed April 7, 2008.

gart), 249 F.3d 987 (9th Cir.2001). The *Taggart* decision established that such awards are compensatory in nature and, thus, not excepted from discharge under 11 U.S.C. § 523(a)(7) as penalties that are not compensation for actual pecuniary loss. Construing the 2003 amendment as superseding *Taggart,* the bankruptcy court excepted such a cost award from the debtor's discharge per § 523(a)(7).

Although BUS. & PROF.CODE § 6086.10(e) plainly was designed to qualify attorney discipline cost awards for the § 523(a)(7) discharge exception, the Ninth Circuit has recently held in a related context that amended § 6086.10 "cannot be construed as remotely punitive so as to negate California's civil intentions." *Gadda v. State Bar,* 511 F.3d 933, 939 (9th Cir.2007). In the wake of *Gadda,* we must honor *Taggart* until such time as the Ninth Circuit decides that *Taggart* lacks vitality. Hence, we REVERSE.

## FACTS

There are no genuine issues of material fact.

Appellant, chapter 7 debtor John William Findley, III, is admitted to practice law in California. The appellee State Bar of California prosecuted him for violations of the California Rules of Professional Conduct and the BUS. & PROF.CODE based on a complaint made by a Findley client.

The State Bar Court Hearing Department rendered findings on January 12, 2004, and recommended that Findley be suspended from practice for one year and be on probation for two years.

Before the State Bar Court Review Department acted on the recommendation, Findley filed a chapter 7 case on March 2, 2004.

The State Bar Court Review Department adopted the hearing officer's findings

John William Findley, III, Oxnard, CA, Pro se.

Kevin W. Coleman, Schnatder, Harrison, Segal & Lewwis, LLP, San Francisco, CA, for State Bar of California.

Before: KLEIN, JURY, and MARKELL, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The issue is whether California's 2003 amendment of its Business and Professions Code ("BUS. & PROF.CODE") § 6086.10 designating attorney discipline cost awards as "penalties" legislatively reversed the result of the Ninth Circuit decision in *State Bar v. Taggart (In re Tag-*

and disciplinary recommendation, with minor modifications, in an Opinion on Review issued on June 15, 2005.

The State Bar Court issued a Certificate of Costs on August 24, 2005, ordering Findley to pay the State Bar $14,054.94 based on BUS. & PROF.CODE § 6086.10, which requires disciplined attorneys, absent proof of hardship, to pay the cost of the disciplinary action. The award consisted of: $56.89, witness fees; $406.80, cost of certifying court documents; $128.25, cost for Review Department transcripts; and $13,463.00, "Reasonable Costs Pursuant to Formula Approved by the Board of Governors."

The California Supreme Court,[1] on November 16, 2005, adopted the Opinion and the discipline cost order.

When Findley interposed his bankruptcy discharge to excuse payment of the $14,054.94 discipline cost award, the State Bar sued to have the debt excepted from discharge per § 523(a)(7).

The State Bar sought summary judgment, contending the 2003 amendment to BUS. & PROF.CODE § 6086.10 made discipline cost awards punitive in nature as a matter of state law and, hence, statutorily overruled the contrary conclusion stated in *Taggart*.

The State Bar's summary judgment evidence included the declaration of Lawrence Doyle, Chief Legislative Counsel for the State Bar in 2003, accompanied by a copy of the Enrolled Bill Report for Assembly Bill 1708, which bill was the vehicle for adding new BUS. & PROF.CODE § 6086.10(e).

Doyle averred that he was responsible for drafting BUS. & PROF.CODE § 6086.10(e) and designed it as a response to *Taggart* to "clarify and re-state the intent of California Legislature that disciplinary costs are monetary sanctions and are part of the punishment imposed" on California lawyers for professional misconduct by requiring them to pay the costs of the proceeding:

> (e) In addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to Section 6086.13, costs imposed pursuant to this section are penalties, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to protect the public. This subdivision is declaratory of existing law.

CAL. BUS. & PROF.CODE § 6086.10(e).[2]

The Enrolled Bill Report was specific that the amendment would make discipline

---

1. The California Supreme Court has plenary authority over California attorneys. The State Bar is its administrative arm in attorney discipline matters. The State Bar Court recommends discipline. An order finally imposing discipline, including a cost order, is an order of the California Supreme Court. *See In re Atty. Discipline Sys.*, 19 Cal.4th 582, 599–600, 79 Cal.Rptr.2d 836, 967 P.2d 49 (1998).

2. The Doyle summary judgment declaration explained:

> 3. Section 6086.10(e) was drafted in response to the *In Re Taggart*, 249 F.3d 987(9th Cir.2000) decision construing the

costs imposed under [§ ] 6086.10 in State Bar disciplinary matters as not being intended by the California Legislature as punishment against a disciplined attorney. *Taggart* then held that these disciplinary costs did not constitute nondischargeable fines or penalties under the Bankruptcy Code, 11 U.S.C. § 527(a)(7).

4. Section 6086.10(e) was added to the California Business and Professions Code to expressly clarify and re-state the intent of California Legislature that disciplinary costs are monetary sanctions and are a part of the punishment imposed on California lawyers for professional misconduct by making him or her pay for part of the costs

cost awards "not dischargeable in bankruptcy." Enr. Bill Rep. AB 1708, at 3 ¶ 2.[3]

The bankruptcy court held that the amendment supplanted *Taggart* and entered summary judgment. This timely appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUE

Whether discipline cost awards under Cal. Bus. & Prof.Code § 6086.10 are excepted from discharge per 11 U.S.C. § 523(a)(7).

## STANDARD OF REVIEW

■ We review summary judgment de novo to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Khaligh v. Hadaegh (In re*

*Khaligh)*, 338 B.R. 817, 823 (9th Cir. BAP2006), *aff'd & adopted*, 506 F.3d 956 (9th Cir.2007).

## DISCUSSION

■ The centerpiece of this appeal is 11 U.S.C. § 523(a)(7), which excepts from discharge a "fine, penalty, or forfeiture" (other than certain tax penalties) that is "payable to and for the benefit of a governmental unit" and that "is not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7).[4]

California endeavored to shoehorn California attorney discipline cost awards into § 523(a)(7) through the device of new Bus. & Prof.Code § 6086.10(e). That subsection was enacted in 2003 with the aim of reversing the result of the Ninth Circuit's *Taggart* decision that the prior version of § 6086.10 reflected compensation for actual pecuniary loss that was not excepted from discharge by § 523(a)(7). *Taggart*, 249 F.3d at 994.[5]

of the proceeding. Because there was apparent confusion in *Taggart*, 249 F.3d at 991–92, about the purpose of costs first added under [§ ] 6086.10 in 1986 and the monetary sanction later added under [§ ] 6083.13[sic] by Cal[.] Stat[s.] 1992, Ch[.] 2300, [§ ] 1, the amendment in [§ ] 6086[.10](e) also made clear that disciplinary costs are penalties "[i]n addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to [§ ] 6086.13." (It should also be noted that imposition and collection of monetary sanctions under [§ ] 6086.13 was conditioned upon approval by the Supreme Court [of] a court rule—a condition that has not occurred.)
Decl. of Lawrence D. Doyle at 1:21–2:22 ("Doyle Decl.").

3. In addition, the Enrolled Bill Report explained:

4. [Bus. & Prof.Code § 6086.10] would (1) enable the Bar to pursue orders for disciplined attorneys to pay [costs] as money judgments; and (2) specify that orders to

pay disciplinary costs [subdiv. (d) ] are *penalties*, as originally intended by the Legislature, and *therefore not dischargeable in bankruptcy*.
Enr. Bill Rep. AB 1708, at 5 ¶ 4 (emphasis supplied).

4. The precise language of § 523(a)(7) provides that a debt of an individual is excepted from discharge:

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
   (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
   (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.
11 U.S.C. § 523(a)(7).

5. The State Bar's position was that the Ninth Circuit's *Taggart* panel was confused about the purpose and status of discipline cost awards and that the 2003 amendment did not

As will be seen, the case in support of legislative reversal of *Taggart* is meritorious but is not necessarily compelling. The counterpoints to the basic argument, coupled with the ruling in *Gadda* that the 2003 amendment of Bus. & Prof.Code § 6086.10(a) permitting enforcement of a discipline cost award as a money judgment is not an ex post facto law because it "cannot be construed as remotely punitive so as to negate California's civil intentions," *Gadda*, 511 F.3d at 939, make it unsound for an inferior tribunal within the Ninth Circuit to disregard *Taggart.*

## I

The Supreme Court laid the foundation for analysis of § 523(a)(7) in *Kelly v. Robinson*, in which a criminal restitution award against a welfare fraudster based on actual loss was held to qualify for the § 523(a)(7) exception to discharge. *Kelly v. Robinson*, 479 U.S. 36, 50–53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

The Court placed a two-part gloss on § 523(a)(7) that it justified by what it described as a longstanding "fundamental policy against federal interference with state criminal prosecutions" in which "rehabilitative" and "deterrent" goals loom large and by a sense that it would be "unseemly to require state prosecutors to submit the judgments of their criminal courts to federal bankruptcy courts." *Kelly*, 479 U.S. at 48–49 & n. 8, 107 S.Ct. 353. These added up to a combination of "strong interests of the States," and of a uniform hands-off-restitution construction of the former Bankruptcy Act as to which there was no indication that Congress

meant to change the law. *Kelly*, 479 U.S. at 53, 107 S.Ct. 353.

Under the first part of the Court's gloss, restitution orders are more "for the benefit of a governmental unit," as that term is used in § 523(a)(7), than for the benefit of the victim who typically receives the restitution. The Court reasoned that the "criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Kelly*, 479 U.S. at 52, 107 S.Ct. 353. Accordingly, it was willing to gloss over the reality that the actual restitution payments generally wind up with the victim.

The second part of the Court's gloss holds that restitution orders are not, in the words of § 523(a)(7), "compensation for actual pecuniary loss." The rationale is that the "victim has no control over the amount of restitution awarded or over the decision to award restitution," which decision "generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." *Kelly*, 479 U.S. at 52, 107 S.Ct. 353. Thus, "they are not assessed 'for ... compensation' of the victim." *Kelly*, 479 U.S. at 53, 107 S.Ct. 353 (omission in original).

The *Kelly* analysis illuminates the following language from § 6086.10(e): "costs imposed pursuant to this section are *penalties*, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, *to promote rehabilitation and to protect the public.*" Cal. Bus. & Prof.Code § 6086.10(e) (emphasis supplied). Subsection (e) plainly was drafted to satisfy *Kelly*.

---

change the law in that respect. Doyle Decl. ¶ 4. This explains the inclusion of the final sentence of Bus. & Prof.Code § 6086.10(e): "This subdivision is declaratory of existing law." Although in *Taggart* the trial judge and the BAP had (noting it was a "close" case)

each held Taggart's discipline cost award nondischargeable per § 523(a)(7), *Taggart v. State Bar*, No. CC–98–1716–KMyP (9th Cir. BAP June 15, 1999), *aff'g* No. RS–98–1277–MJ (C.D.Cal.), we do not here suggest *Taggart* was incorrectly decided.

## II

The bankruptcy court concluded that discipline cost awards to the State Bar under Bus. & Prof.Code § 6086.10, as amended in 2003 by the addition of § 6086.10(e), now satisfy the controlling § 523(a)(7) test that is based on *Kelly*.[6]

## A

On its face, the new § 6086.10(e) appears to touch all the *Kelly* bases. The California legislature declared the award to be a penalty, payable to a governmental unit, and for the purposes of promoting rehabilitation and protecting the public.

New § 6086.10(e) tracks the first part of § 523(a)(7) and, as noted, echoes *Kelly:* "costs imposed pursuant to this section are *penalties,* payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to protect the public." Cal. Bus. & Prof.Code § 6086.10(e) (emphasis supplied).[7]

---

**6.** The bankruptcy court's decision is consistent with results in other jurisdictions. *See, e.g., N.H. Sup.Ct. Prof'l Conduct Comm. v. Richmond (In re Richmond)*, 351 B.R. 6, 14 (Bankr.D.N.H.2006) (attorney discipline costs excepted from discharge); *Atty. Grievance Comm'n v. Smith (In re Smith)*, 317 B.R. 302, 312 (Bankr.D.Md.2004) (same); *Supreme Court v. Bertsche (In re Bertsche)*, 261 B.R. 436, 437–38 (Bankr.S.D.Ohio 2000) (same); *State Bar v. Doerr (In re Doerr)*, 185 B.R. 533, 537 (Bankr.W.D.Mich.1995) (same); *Cillo v. Fla. Bar (In re Cillo)*, 165 B.R. 46, 50 (M.D.Fla.1994) (same); *In re Williams*, 158 B.R. 488, 491 (Bankr.D.Idaho 1993) (same); *Atty. Regis. & Disciplinary Comm'n v. Betts (In re Betts)*, 149 B.R. 891, 898 (Bankr. N.D.Ill.1993) (same); *Bd. of Attys. Prof'l Responsibility v. Haberman (In re Haberman)*, 137 B.R. 292, 295–96 (Bankr.E.D.Wis.1992) (same). The Ninth Circuit in *Taggart*, acknowledging the existence of such results in other jurisdictions, reasoned that the analysis needed to be made on a state-by-state basis. *Taggart*, 249 F.3d at 993–94 & n. 8.

**7.** Bus. & Prof.Code § 6086.10 (2003 amendments emphasized):

(a) Any order imposing a public reproval on a member of the State Bar shall include a direction that the member shall pay costs. In any order *imposing discipline, or accept-*ing a resignation with a disciplinary matter pending, the Supreme Court shall include a direction that the member shall pay costs. *An order pursuant to this subdivision is en-forceable both as provided in Section 6140.7 and as a money judgment.*
(b) The costs required to be imposed pursuant to this section include all of the following:

(1) The actual expense incurred by the State Bar for the original and copies of any reporter's transcript of the State Bar proceedings, and any fee paid for the services of the reporter.
(2) All expenses paid by the State Bar which would qualify as taxable costs recoverable in civil proceedings.
(3) The charges determined by the State Bar to be "reasonable costs" of investigation, hearing, and review. These amounts shall serve to defray the costs, other than fees for the services of attorneys or experts, of the State Bar in the preparation or hearing of disciplinary proceedings, and costs incurred in the administrative processing of the disciplinary proceeding and in the administration of the Client Security Fund.
(c) A member may be granted relief, in whole or in part, from an order assessing costs under this section, or may be granted an extension of time to pay these costs, in the discretion of the State Bar, upon grounds of hardship, special circumstances, or other good cause.
(d) In the event an attorney is exonerated of all charges following a formal hearing, he or she is entitled to reimbursement from the State Bar in an amount determined by the State Bar to be reasonable expenses, other than fees for attorneys or experts, of preparation for the hearing.
(e) *In addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to Section 6086.13, costs imposed pursuant to this section are penalties, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to*

Part of the rationale of the Ninth Circuit in *Taggart* for concluding that attorney discipline costs are dischargeable was that § 6086.10 did not contain language suggestive of a penalty. In contrast, another section of the same statute, BUS. & PROF. CODE § 6086.13, unambiguously authorizes awards of monetary penalties against disciplined attorneys. *Taggart*, 249 F.3d at 992–94. Unlike § 6086.10, the § 6086.13 penalty does not depend, and is not linked to, actual expenses incurred by the State Bar.[8]

The contrast between § 6086.10 and § 6086.13 led the Ninth Circuit to conclude that the California Legislature intended cost awards under BUS. & PROF.CODE § 6086.10 to be compensatory rather than penal in nature. Hence, the *Taggart* court ruled that attorney discipline cost awards under BUS. & PROF.CODE § 6086.10 do not qualify for the § 523(a)(7) exception to discharge. *Taggart*, 249 F.3d at 992–94.

Now that § 6086.10(e) labels attorney discipline cost awards as "penalties" and adds that they "promote rehabilitation" and "protect the public," it is more difficult to say that the state legislature does not intend such awards to be penalties.

This sufficiently erodes the intellectual foundation of *Taggart* that there is reason to doubt the continuing validity of the conclusion it reached regarding the § 523(a)(7) discharge status of California's attorney discipline cost awards.

## B

The argument for the legislative overruling of the *Taggart* result by the enactment of BUS. & PROF.CODE § 6086.10(e), however, has enough weaknesses so as to give an inferior tribunal pause before distinguishing away circuit precedent as obsolete.

### 1

In the first place, § 523(a)(7) is a federal statute that the California legislature lacks authority to alter. Whether something is a "fine," a "penalty," or "restitution" as those terms are used in § 523(a)(7) is a question of federal law. In *Taggart*, the Ninth Circuit viewed the central question as whether discipline cost awards are "penal in nature." *Taggart*, 249 F.3d at 994. It assessed this question

---

*protect the public. This subdivision is declaratory of existing law.*
CAL. BUS. & PROF.CODE § 6086.10 (emphasized language added by Stats.2003, c. 334 [A.B. 1708], § 4; eff. Sept. 8, 2003).

8. The entirety of BUS. & PROF.CODE § 6086.13 provides:

(a) Any order of the Supreme Court imposing suspension or disbarment of a member of the State Bar, or accepting resignation with a disciplinary matter pending may include an order that the member pay a monetary sanction not to exceed five thousand dollars ($5,000) for each violation, subject to a total limit of fifty thousand dollars ($50, 000).
(b) Monetary sanctions collected under subdivision (a) shall be deposited into the Client Security Fund.
(c) The State Bar shall, with the approval of the Supreme Court, adopt rules setting forth guidelines for the imposition and collection of monetary sanctions under this section.
(d) The authority granted under this section is in addition to the provisions of Section 6086.10 and any other authority to impose costs or monetary sanctions.
(e) Monetary sanctions imposed under this section shall not be collected to the extent that the collection would impair the collection of criminal penalties or civil judgments arising out of transactions connected with the discipline of the attorney. In the event monetary sanctions are collected under this section and criminal penalties or civil judgments arising out of transactions connected with the discipline of the attorney are otherwise uncollectible, those penalties or judgments may be reimbursed from the Client Security Fund to the extent of the monetary sanctions collected under this section.
CAL. BUS. & PROF.CODE § 6086.13.

with reference to the structure of the attorney discipline statute, the California civil principle that prevailing parties may recover their costs of litigation, and legislative history. *Taggart,* 249 F.3d at 991–94.

State legislatures cannot amend the Bankruptcy Code. Nor can there be an effective state statute providing that a particular category of debt shall be excepted from bankruptcy discharge by virtue of § 523(a). The best that a state legislature can do on its own is to establish an obligation that meets the criteria of the federal statute.

The California legislature in 2003 amended the statute that had been held in *Taggart* to constitute compensation for "actual pecuniary loss" in three respects. In § 6086.10(a), it made the award enforceable as a money judgment. In § 6086.10(e), saying that it was "declaratory of existing law," it labeled discipline cost awards as "penalties" and designated the purpose of such awards as "to promote rehabilitation and to protect the public." CAL. BUS. & PROF.CODE § 6086.10.

2

The State Bar contends that the 2003 amendments meet the criteria of § 523(a)(7). The label "penalty" has been affixed to § 6086.10. Because the Supreme Court focused in *Kelly* on a state's purposes and interests for imposing the monetary obligation in determining its characterization of the obligation under § 523(a)(7), the purpose of § 6086.10 was stated as promoting rehabilitation and protecting the public.

■ It does not necessarily follow from the mere addition of labels arguably not affecting substance that *Taggart's* conclusion that such cost awards are compensation for actual pecuniary loss is no longer viable. The provision that § 6086.10(e) was "declaratory of existing law" smacks of a motion to reconsider the result in *Taggart* and cannot change the underlying *Taggart* analysis. As the Supreme Court has explained, the "location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Smith v. Doe,* 538 U.S. 84, 94, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Ex Post Facto Clause).

■ The form of the *Taggart* analysis, the validity of which is not called into question by this appeal, focused on underlying substance, not mere cosmetics. One could construe the enactment of § 6086.10(e) as solely to affix a label ("penalty") and state purposes ("to promote rehabilitation and to protect the public") so as to make such awards appear to be within the zone of § 523(a)(7)'s coverage.

What did not change is the unabashedly compensatory nature of § 6086.10 that is apparent from the face of § 6086.10(b):

(b) The costs required to be imposed pursuant to this section include all of the following:

(1) The *actual expense incurred by the State Bar* for the original and copies of any reporter's transcript of the State Bar proceedings, and any fee paid for the services of the reporter.

(2) All *expenses paid by the State Bar* which would qualify as taxable costs recoverable in civil proceedings.

(3) The charges determined by the State Bar to be "reasonable costs" of investigation, hearing, and review. These amounts *shall serve to defray the costs,* other than fees for the services of attorneys or experts, of the State Bar in the preparation or hearing of disciplinary proceedings, and costs incurred in the administrative processing of the disciplinary proceeding and in the administration of the Client Security Fund.

CAL. BUS. & PROF.CODE § 6086.10(b) (emphasis supplied).

Moreover, the overall structure of the statute remained static. There was no change to the penalty provisions of § 6086.13, the existence of which provisions were emphasized in *Taggart*. The addition of authority in § 6086.10(a) for enforcement by way of money judgment is consistent with a civil purpose.

Nor was there any change that necessarily would eviscerate the Ninth Circuit's analogy in *Taggart* to mandatory costs in civil litigation. It noted in particular that such costs are awarded "even where the losing party's claims or defenses have merit" and indicated that it was "highly unlikely" that California "imposed mandatory costs in civil proceedings in order to punish losing parties or to deter them from bringing litigation or asserting defenses." *Taggart*, 249 F.3d at 993 n. 6. The formula for attorney discipline costs includes costs for overcoming an attorney's meritorious defenses.

These considerations, viewed through the matrix of the *Taggart* analysis, could support a conclusion that § 6086.10(e) amounts to no more than insubstantial cosmetics and does not qualify attorney discipline cost awards for exception to discharge under § 523(a)(7).

3

Although the State Bar invokes *Kelly*, there are a number of differences from *Kelly* that also may give one pause. First, the cost award, as evident from the face of the cost order and from § 6086.10(b), unambiguously represents the recovery by the State Bar of its own actual expense of investigating and prosecuting the disciplinary action. Unlike *Kelly*, where the Supreme Court reasoned that victims have little control over restitution awards, here the State Bar has substantial control over the amount of the award and over the

decision to make the award. *Kelly*, 479 U.S. at 52, 107 S.Ct. 353.

Second, unlike *Kelly*, this is a civil enforcement matter and not a criminal prosecution. The firm federal policy of reluctance to interfere with state criminal judgments was the key justification for the gloss that the Supreme Court imposed on § 523(a)(7). *Kelly*, 479 U.S. at 44–46, 107 S.Ct. 353. One may doubt whether that "hands-off" policy of federal deference to states is as potent in civil enforcement matters as in criminal prosecutions.

Third, there is a more logical and powerful nexus between criminal restitution, as in *Kelly*, and purposes of benefitting society as a whole and of rehabilitating the offender than in making a disciplined attorney pay such items as the State Bar's witness fees, costs of certifying court documents, and transcript expenses. This difference adds to the interpretative risk that a cost award will not be viewed as reflecting the same penal and rehabilitative interests of the state as a sentence imposed following a criminal conviction. *Kelly*, 479 U.S. at 53, 107 S.Ct. 353.

In this connection, the Ninth Circuit noted in *Taggart* that it had not yet decided whether, "under *Kelly*, the costs imposed as part of a sentence for a criminal offense are nondischargeable under § 523(a)(7)." *Taggart*, 249 F.3d at 993–94 n. 9. That parallel unanswered question, which is directly linked to a criminal context, adds further uncertainty.

4

Finally, the law of unintended consequences may mean that less is at stake in the § 523(a)(7) debate than initially meets the eye. First, a debt for a "penalty" that is nondischargeable under § 523(a)(7) is correlatively ineligible for distribution as a general unsecured claim. Rather, payment on claims for penalties is statutorily

subordinated to timely-filed and tardily-filed unsecured claims. 11 U.S.C. § 726(a)(4). The senior claims must be paid in full before anything can be paid on claims for penalties. 11 U.S.C. § 726(b). Nor does status as a money judgment help in light of the trustee's authority to "avoid a lien that secures a claim of a kind specified in [§ ] 726(a)(4)." 11 U.S.C. § 724(a). Thus, the State Bar, if victorious, will be obliged to note in its chapter 7 proofs of claim that its debt is statutorily subordinated.

Second, the State Bar could be setting itself up for pyrrhic victory in chapter 13 cases. Debts that are excepted from discharge under § 523(a)(7) are (other than debts "for restitution, for a criminal fine, included in a sentence on the debtor's conviction of a crime") *dischargeable* in chapter 13 cases. 11 U.S.C. § 1328(a)(3).

One essential element of chapter 13 plan confirmation is that the value of "property to be distributed under the plan [i.e., payments] on account of *each* allowed unsecured claim is not less than the amount that would be paid on *such* claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4) (emphasis added).

One can envision confirmable plans under which the State Bar receives nothing or only token payments, by virtue of separate classification based on the effect of the § 726(a)(4) subordination, while general unsecured claims are paid substantial dividends during the life of the plan. It would then suffer a discharge of the discipline cost award debt. Nor is this possibility trivial in view of the 2005 amendments to the Bankruptcy Code that were designed to channel a higher proportion of debtors into chapter 13.

In short, the State Bar's case for the legislative overruling of the *Taggart* result is not airtight. There is a nontrivial chance that the Ninth Circuit, applying the same matrix of analysis as in *Taggart,* will continue to regard § 6086.10 as compensatory.

We do not need, however, to consider whether that modicum of risk, standing alone, would necessitate upsetting the summary judgment in favor of the State Bar. The effect of the Ninth Circuit's subsequent decision in *Gadda* must now be added to the summary judgment equation.

### III

The Ninth Circuit interpreted revised BUS. & PROF.CODE § 6086.10 in *Gadda,* which was issued shortly before the oral argument of this appeal. We asked the parties to address *Gadda* in post-argument briefs in light of its focus on the same 2003 legislative act that forms the basis of this appeal.

Mr. Gadda's discipline, including a $21,845.14 discipline cost award, was complete before the enactment of the 2003 amendments added a sentence to § 6086.10(a) (in addition to adding § 6086.10(e)) permitting entry of a money judgment on account of such a cost award. When, in 2005, the State Bar threatened Gadda with a money judgment on the cost award, he sued in federal court challenging the State Bar's ability to collect.

The issue was retroactive application of the 2003 amendments, which was alleged to violate both the Due Process Clause of the Fourteenth Amendment and the Ex Post Facto Clause. After concluding that amended § 6086.10 survived rational basis scrutiny under standard due process analysis, the Ninth Circuit addressed the Ex Post Facto Clause. *Gadda,* 511 F.3d at 939.

The test for whether an enactment constitutes punishment that could offend the Ex Post Facto Clause is whether: (1) the

legislature in enacting the statute intended to impose punishment and (2), if not, whether the enactment is so punitive in purpose or effect as to negate the state's intention to deem it civil. *Smith,* 538 U.S. at 92, 123 S.Ct. 1140; *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *Hatton v. Bonner* 356 F.3d 955, 961 (9th Cir.2004).

The Ninth Circuit concluded the 2003 amendment to § 6086.10(a) "cannot be construed as remotely punitive so as to negate California's civil intentions." *Gadda,* 511 F.3d at 939. In order to reach this conclusion under the Supreme Court's test, the court of appeals also implicitly concluded that the state legislature in amending § 6086.10 did *not* intend to impose punishment. While this does not necessarily exclude construing § 6086.10 as nevertheless constituting a civil "penalty" for § 523(a)(7) purposes, the *Gadda* decision clouds that picture.

The gravamen of the arguments made in post-argument briefing was that the contexts are different. True enough. Legal training prepares one to accept seemingly inconsistent propositions that "punitive" and "penalty" might mean different things in different contexts and be determined by different standards and that "civil" does not necessarily equate with "compensatory." When coping with such matters, one looks for principled distinctions. The post-argument briefs, however, do not articulate principled distinctions. That leaves open the possibility that the Ninth Circuit would rule that the State Bar, which was the appellee in *Gadda,*[9] is impermissibly

trying to have it both ways. We leave that question to the court of appeals.

However clear the California legislature may have been regarding its intentions vis-à-vis § 523(a)(7) and the result in *Taggart,* we cannot say with sufficient confidence that the Ninth Circuit would regard "new" § 6086.10 as leading to a conclusion different than its conclusion under "old" § 6086.10. In other words, we cannot say that the State Bar is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), *incorporated by* Fed. R. Bankr.P. 7056.

## CONCLUSION

While we recognize that the State Bar has a meritorious case for contending that application of the Ninth Circuit's *Taggart* precedent leads to a conclusion opposite from that reached in *Taggart,* the situation is not so clear as to warrant disregard of the *Taggart* result by inferior tribunals within the Ninth Circuit. Unless and until the court of appeals rules to the contrary, we think it prudent to adhere to the *Taggart* result. Accordingly, the judgment is REVERSED.

---

**9.** The appearance of *Gadda* on the scene illustrates Karl Llewellyn's observation about the challenge facing counsel when rendering advice predicting future appellate decisions:

> [I]f the reckoning is from original *lay action* to the legal result on eventual appeal in an eventual lawsuit arising out of such action, that whole picture must be discounted as

still subject to skewing or scuttling by the uncontrollable possible early appearance in some unhappy forum of a parallel situation botched by some other outfit in the doing and by ninnies in the litigating.

Karl Llewellyn, The Common Law Tradition: Deciding Appeals 17 (1960) (emphasis in original).