**In re Joseph Elliott RYAN, Debtor.**

**Joseph Elliott Ryan, Appellant,**

**v.**

**United States of America, Appellee.**

**BAP No. ID–07–1316–DMkMo.**
**Bankruptcy No. 03–21393.**
**Adversary No. 07–07002.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued by Telephone Conference and Submitted on Feb. 21, 2008.

Filed June 3, 2008.

Cameron Phillips, Couer d'Alene, ID, for Appellant.

Warren Derbidge, Boise, ID, for Appellee.

Before DUNN, MARKELL, and MONTALI, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

Joseph Elliott Ryan ("Ryan") was convicted of a felony in federal court. After serving a prison sentence and paying a criminal fine, he filed for bankruptcy under chapter 7.[1] Shortly after receiving his

---

**1.** Unless otherwise indicated, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23, as the case from which this appeal arises was filed before October 17, 2005, the effective date of most BAPCPA provisions.

chapter 7 discharge, Ryan filed for chapter 13 relief, seeking to discharge costs of prosecution awarded in his criminal judgment. The bankruptcy court held that costs of prosecution are "criminal fines" under § 1328(a)(3) and thus are excepted from discharge.

For the reasons stated below, we REVERSE.

## I. FACTS

On July 13, 1995, Ryan was convicted of possession of an unregistered firearm under 26 U.S.C. § 5861(d) in the United States District Court for the District of Alaska. Ryan was sentenced to fifty-seven months in prison followed by three years of supervised release. In addition, Ryan was ordered to pay a fine of $7,500, restitution in the amount of $750,000, costs of prosecution in the amount of $83,420, and a special assessment of $50.00. Ryan served his sentence. He also paid the $7,500 fine. The district court, following an appellate mandate, ultimately eliminated the restitution obligation.

On April 25, 2003, Ryan filed a petition for bankruptcy relief under chapter 7 in the District of Idaho. He received his chapter 7 discharge on August 11, 2003. Shortly thereafter, Ryan filed a case under chapter 13, listing as his only obligation the amount of unpaid costs of prosecution owed to the United States ("Government").

Before completing payments under his chapter 13 plan, Ryan filed an adversary complaint seeking to determine whether his obligation to the Government would be dischargeable under § 1328(a)(3). The bankruptcy court dismissed the complaint as premature.

Ryan completed payments under the plan, and an "Order of Discharge" was entered on October 5, 2006. The chapter 13 trustee's final report reflected that the Government received $2,774.89 from payments made by Ryan under his plan, but a balance of $77,088.34 on the Government's costs of prosecution claim remained unpaid. Ryan then renewed his request for determination of dischargeability. The bankruptcy court held that the unpaid portion of the Government's claim for costs of prosecution was excepted from discharge by § 1328(a)(3). Ryan appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(a) and (b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Is an obligation for the costs of prosecution imposed as part of a sentence in a federal criminal case excepted from the debtor's discharge under § 1328(a)(3)?

## IV. STANDARDS OF REVIEW

■ "We review issues of statutory construction and conclusions of law, including interpretation of provisions of the Bankruptcy Code, de novo." *Mendez v. Salven (In re Mendez)*, 367 B.R. 109, 113 (9th Cir. BAP 2007).

## V. DISCUSSION

Section 1328(a)(3) provides an exception to discharge in chapter 13 for "restitution, or a criminal fine." It states, in pertinent part:

[A]s soon as practicable after the completion by the debtor of all payments under the plan, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title except any debt . . .

(3) for restitution, or a *criminal fine*, included in a sentence on the debtor's conviction of a crime [.] (emphasis added).

Here, the obligation to pay costs of prosecution was imposed as part of the judgment in Ryan's criminal case. *See* 28 U.S.C. § 1918(b).[2] The essential question, then, is whether these costs of prosecution constitute a "criminal fine."

■ Statutory interpretation begins with a review of the particular language used by Congress in the relevant version of the law.

The starting point in discerning congressional intent is the existing statutory text, *see Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), and not the predecessor statutes. It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."

*Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (citations omitted).

■ Where statutory language is ambiguous, courts may look beyond the specific statute itself to the context in which it is used and to relevant legislative history, if it exists. "Our duty, in matters of statutory construction, is to give effect to the intent of Congress." *A–Z Int'l v. Phillips,* 323 F.3d 1141, 1146 (9th Cir.2003) (citations omitted).

[W]hether a statute is ambiguous is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.

*Hough v. Fry (In re Hough),* 239 B.R. 412, 414 (9th Cir. BAP 1999) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). However, in the absence of ambiguity, it is not the role of the courts to remake statutory language to fit the court's conception of what Congress may have meant to achieve through its statutory enactments.

[I]n our constitutional system the commitment to the separation of powers is too fundamental for us to preempt congressional action by judicially decreeing what accords with "common sense and the public weal." Our Constitution vests such responsibilities in the political branches.

*TVA v. Hill,* 437 U.S. 153, 195, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

A. *Opposing policy goals*

■ The term "criminal fine" is not defined in § 1328 or anywhere else in the Bankruptcy Code. However, its use in § 1328(a)(3) implicates two important policies embedded in the Bankruptcy Code. First, in light of the objective to provide a fresh start for debtors overburdened by debts that they cannot pay, exceptions to discharge are interpreted strictly against objecting creditors and in favor of debtors. *See, e.g., Snoke v. Riso (In re Riso),* 978 F.2d 1151, 1154 (9th Cir.1992); *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir.1986); *Devers v. Bank of Sheridan, Montana (In re Devers),* 759 F.2d 751, 754 (9th Cir.1985). In chapter 13, this principle is particularly important because Congress adopted the liberal "superdischarge" provisions of § 1328 as an incentive to debtors to commit to a plan to pay their creditors all of their disposable income over a period of years rather than simply discharging their debts in a chapter 7 liquidation.[3]

---

**2.** 28 U.S.C. § 1918(b) provides:

Whenever any conviction for any offense not capital is obtained in a district court,

the court may order that the defendant pay the costs of prosecution.

**3.** The "superdischarge" in chapter 13 was substantially curtailed in provisions of BAPC-

Accordingly, Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all, of § 523(a)'s exceptions to discharge. See 5 Collier on Bankruptcy ¶ 1328.01[1][c] (15th ed. 1986) ("[T]he dischargeability of debts in chapter 13 that are not dischargeable in chapter 7 represents a policy judgment that [it] is preferable for debtors to attempt to pay such debts to the best of their abilities over three years rather than for those debtors to have those debts hanging over their heads indefinitely, perhaps for the rest of their lives") (footnote omitted).

*Pa. Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

A second, countervailing policy consideration is a historic deference, both in the Bankruptcy Code and in the administration of prior bankruptcy law, to excepting criminal sanctions from discharge in bankruptcy. Application of this policy is consistent with a general recognition that, "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the *'honest* but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.,* —— U.S. ——, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007) (emphasis added).

These policies have been considered by the Supreme Court in two decisions related to the issue before us in this appeal, *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), and *Pa. Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

**B.** *Kelly and its progeny*

In the *Kelly* case, the issue was whether a debtor could discharge a financial restitution obligation, imposed as a condition of probation in her Connecticut criminal sentence for wrongful receipt of welfare benefits, in a chapter 7 bankruptcy. Although notified of the debtor's bankruptcy filing, Connecticut authorities did not file a proof of claim or object to the debtor's discharge, as their position was that the debtor's bankruptcy filing would not affect the conditions of her probation. The debtor ultimately filed an adversary proceeding in bankruptcy court seeking a declaratory judgment that her criminal restitution obligation was discharged. The bankruptcy court denied the relief requested. The district court affirmed, but the Second Circuit reversed. The Second Circuit held that the restitution obligation was a "debt" for purposes of the Bankruptcy Code and was not excepted from the debtor's discharge under § 523(a)(7) because under Connecticut law, restitution was assessed "for the loss or damage caused [by the crime]." *Kelly,* 479 U.S. at 43, 107 S.Ct. 353.[4]

The Supreme Court reversed. As described by this Panel in *Findley v. State Bar of California (In re Findley),* 387 B.R. 260 (9th Cir. BAP 2008), in *Kelly,* the Supreme Court

> placed a two-part gloss on § 523(a)(7) that it justified by what it described as a longstanding "fundamental policy against federal interference with state criminal prosecutions" in which "rehabilitative" and "deterrent" goals loom large and by a sense that it would be "un-

PA, but the language of § 1328(a)(3) was not changed.

**4.** Section 523(a)(7) excepts from the debtor's discharge a fine, penalty or forfeiture payable to or for the benefit of a governmental unit, [that] is not compensation for actual pecuniary loss....

seemly to require state prosecutors to submit the judgments of their criminal courts to federal bankruptcy courts." *Kelly*, 479 U.S. at 48–49 & n. 8[, 107 S.Ct. 353]. These added up to a combination of "strong interests of the States," and of a uniform hands-off-restitution construction of the former Bankruptcy Act as to which there was no indication that Congress meant to change the law. *Kelly*, 479 U.S. at 53, 107 S.Ct. 353. Under the first part of the Court's gloss, restitution orders are more "for the benefit of a governmental unit," as that term is used in § 523(a)(7), than for the benefit of the victim who typically receives the restitution. The Court reasoned that the "criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Kelly*, 479 U.S. at 52, 107 S.Ct. 353. Accordingly, it was willing to gloss over the reality that the actual restitution payments generally wind up with the victim.

The second part of the Court's gloss holds that restitution orders are not, in the words of § 523(a)(7), "compensation for actual pecuniary loss." The rationale is that the "victim has no control over the amount of restitution awarded or over the decision to award restitution," which decision "generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." *Kelly*, 479 U.S. at 52, 107 S.Ct. 353. Thus, "they are not assessed 'for ... compensation' of the victim." *Kelly*, 479 U.S. at 53, 107 S.Ct. 353 (omission in original).

Accordingly, the Supreme Court held in *Kelly* that criminal restitution obligations were excepted from a debtor's discharge under § 523(a)(7) in chapter 7 cases.

A number of courts have extended the *Kelly* rationale to determine that costs of prosecution imposed as a penalty or sanction in criminal proceedings are excepted from a debtor's discharge in chapter 7 pursuant to § 523(a)(7). *See, e.g., Thompson v. Virginia (In re Thompson)*, 16 F.3d 576, 581 (4th Cir.1994) (holding assessment of costs of prosecution under state law as part of a sentence nondischargeable); *Tennessee v. Hollis (In re Hollis)*, 810 F.2d 106, 108 (6th Cir.1987) (holding costs assessed as condition of probation in state court as nondischargeable); *Matter of Zarzynski*, 771 F.2d 304, 305–06 (7th Cir. 1985) (holding costs imposed as part of sentence in state criminal action are intended to punish and thus nondischargeable); *United States v. Garvin (In re Garvin)*, 84 B.R. 824, 826 (Bankr.M.D.Fla. 1988) (holding costs of prosecution are not awarded to compensate for pecuniary losses); *United States v. Cox (In re Cox)*, 33 B.R. 657, 662 (Bankr.M.D.Ga.1983) (holding that discretionary imposition of costs is not compensation for pecuniary loss).

A majority of courts have used similar reasoning to bring costs incurred in connection with attorney disciplinary proceedings under the § 523(a)(7) exception to discharge in chapter 7 cases. *See, e.g., N.H. Supreme Court Prof'l Conduct Comm. v. Richmond (In re Richmond)*, 351 B.R. 6, 14 (Bankr.D.N.H.2006) (costs awarded to state bar in attorney disciplinary proceedings are excepted from discharge). *Accord Attorney Grievance Comm'n v. Smith (In re Smith)*, 317 B.R. 302, 312 (Bankr.D.Md.2004); *Supreme Court of Ohio v. Bertsche (In re Bertsche)*, 261 B.R. 436, 437–38 (Bankr.S.D.Ohio 2000); *State Bar of Mich. v. Doerr (In re Doerr)*, 185 B.R. 533, 537 (Bankr. W.D.Mich.1995); *Cillo v. The Fla. Bar (In re Cillo)*, 165 B.R. 46, 50 (M.D.Fla.1994); *In re Williams*, 158 B.R. 488, 491 (Bankr.D.Idaho 1993); *Attorney Reg. and Disciplinary Comm'n v. Betts (In re Betts)*, 149 B.R. 891, 898 (Bankr.N.D.Ill. 1993); *Board of Attorneys Prof'l Resp. v.*

*Haberman (In re Haberman)*, 137 B.R. 292, 295–96 (Bankr.E.D.Wis.1992). *But see State Bar of Cal. v. Taggart (In re Taggart)*, 249 F.3d 987 (9th Cir.2001) (holding costs of attorney disciplinary proceedings to be compensatory under California law, thus dischargeable).[5]

The courts in these cases generally have described costs of prosecution as within the overall coverage of the § 523(a)(7) discharge exception as fines, penalties or forfeitures, but in only one case did the court directly characterize the costs of prosecution as a fine. *See Garvin*, 84 B.R. at 826. The *Garvin* court based that characterization on its reading of the decisions in *Zarzynski* and *Cox*. In *Zarzynski*, the Seventh Circuit determined that "[t]he costs can be viewed as part of the penalty ...," 771 F.2d at 306, and in *Cox*, the bankruptcy court characterized the costs of prosecution as "a penalty to punish Defendant for his violation of the criminal laws," and as "punishment for his violation of the criminal laws," 33 B.R. at 662. In neither decision are the costs of prosecution described as a "fine." In these circumstances, the *Garvin* court's characterization of costs of prosecution imposed in a criminal judgment as a "fine" is not persuasive or in any sense dispositive.

### C. *Davenport and the chapter 13 discharge*

In *Davenport*, the Supreme Court was confronted with debtors who had pleaded guilty to welfare fraud and were sentenced to one year's probation, with a condition to their probation being that they would make monthly restitution payments to the county probation department. *Davenport*, 495 U.S. at 555–56, 110 S.Ct. 2126. The debtors subsequently filed a chapter 13 petition and scheduled the restitution obligation as an unsecured debt. In response, the probation authorities commenced a probation violation proceeding, alleging that the debtors had violated the terms of their probation. The debtors then filed an adversary proceeding in bankruptcy court, seeking a declaration that their restitution obligation was a dischargeable debt. *Id.* at 556, 110 S.Ct. 2126.

While the adversary proceeding was pending, the bankruptcy court confirmed the debtors' chapter 13 plan, without objection from any creditor. The bankruptcy court subsequently held in the adversary proceeding that the debtors' restitution obligation was an unsecured debt, dischargeable under § 1328(a) in chapter 13. *Id.* at 557, 110 S.Ct. 2126.[6] On appeal, the district court reversed, holding that "state-imposed criminal restitution obligations" could not be discharged in chapter 13. The Third Circuit reversed again, "concluding that 'the plain language of the chapter' demonstrated that restitution orders are debts within the meaning of the [Bankruptcy]

---

**5.** *Taggart* turned on the Ninth Circuit's interpretation of two statutes under the then-current version of the California Business and Professions Code. Section 6086.10 of that code labeled fees levied under that section as "costs" imposed for reimbursement of expenses of disciplinary proceedings. *Taggart*, 249 F.3d at 992. On the other hand, fees levied under § 6086.13 of the same code were designated as "monetary sanctions." *Id.* The Ninth Circuit held that the statutory structure along with its legislative history indicated that "costs" were not fines. *Id.* at 994. The Ninth Circuit specifically noted that all indications were that California did not view the assessment of costs in the subject context as penal in nature. Consequently, any analogy to the criminal context was "inapt." *Id.* Accordingly, the relevance of *Taggart* to the appeal in this case is limited.

**6.** At the time that *Davenport* was decided, the "superdischarge" provisions in § 1328 did not provide any exception to discharge in chapter 13 for criminal sanctions.

Code and hence dischargeable in proceedings under Chapter 13." *Id.*

The Supreme Court affirmed the Third Circuit, in an opinion written by Justice Marshall, who had dissented in *Kelly.* The court held that the debtors' restitution obligation was a "debt" within the broad compass of the definitions of "debt" and "claim" in §§ 101(11) and 101(4)(A) of the Bankruptcy Code. *Id.* at 558–60, 110 S.Ct. 2126. In addition, while reaffirming its commitment to the principles applied in *Kelly,* the Supreme Court in *Davenport* concluded that the debtors' discharge in chapter 13 could encompass their criminal restitution obligation. That conclusion was based on Congress's broader discharge provisions for debtors in chapter 13 and the failure to include an exception to discharge provision comparable to § 523(a)(7) in chapter 13. *Id.* at 562–64, 110 S.Ct. 2126.

### D. *Congressional reaction to Davenport*

The reaction of Congress to the Supreme Court's *Davenport* decision was swift and direct. Section 1328(a) was amended in 1990 to include an exception to chapter 13 discharge for awards of restitution. *See* The Criminal Victims Protection Act of 1990, enacted as part of the Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789. The language expanding the exception to cover "a criminal fine" was added in the 1994 amendments to the Bankruptcy Code. Bankruptcy Reform Act of 1994, Pub.L. 103–394, 108 Stat. 4106.

The legislative history is clear that Congress intended to overrule the result in *Davenport* in its amendments to the Bankruptcy Code. *See, e.g.,* S.Rep. No. 434, at 8 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4065, 4071 ("[T]his amendment will have the effect of overruling the Supreme Court's recent decision in *Pennsylvania Department of Public Welfare v. Daven-*

*port,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 ... (1990), which held that criminal restitution obligations are dischargeable debts under Chapter 13."); H.R.Rep. No. 681(I), at 165 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6571 ("Section 1902 responds to the May 29, 1990, *Pennsylvania Department of Public Welfare v. Davenport* decision, in which the Supreme Court of the United States ruled that criminal restitution debts are dischargeable upon completion of a Chapter 13 reorganization plan. Section 1902 corrects this result by adding a new paragraph (3) to Section 1328(a) so that criminal restitution payments will be nondischargeable in Chapter 13. Section 1902 is not intended to alter in any way the coverage of section 523(a)(7), as that paragraph has been interpreted in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 ... (1986), to make criminal restitution obligations nondischargeable in Chapter 7. As a result of the change made in Section 1902, no debtor with criminal restitution obligations will be able to discharge them through any bankruptcy proceeding.").

However, if Congress wanted to create an exception to discharge in chapter 13 cases to cover all penal sanctions, it had language ready at hand to achieve that result in the language of § 523(a)(7), with the expansive gloss of *Kelly,* and it did not use it. In fact, the above-quoted language from the House Report suggests that the 1990 amendment to § 1328(a) specifically was not intended to incorporate the full scope of the exception to discharge set forth in § 523(a)(7) and thus preserved a broader discharge in chapter 13 than in chapter 7.

The legislative history of the 1994 amendments to the Bankruptcy Code notes that criminal fines were added to the list of obligations that were not discharge-

able in chapter 13 but does not shed much light on the rationale behind that addition.[7]

A number of cases, including *Hollis* and *Zarzynski,* holding that costs of prosecution included in a criminal judgment are nondischargeable in chapter 7, had been decided prior to the 1990 and 1994 amendments to § 1328(a) and presumably were known to Congress. That Congress did not specifically include costs of prosecution in the amendments to § 1328(a) informs our decision here. Further, the dissent suggests that Congress likely intended that the term "criminal fine" include costs of prosecution. We are not free to favor such a perceived intent over the plain words of the statute.

### E. *Criminal fines and costs of prosecution*

As noted above, "criminal fine" is not defined in the Bankruptcy Code. Fines and costs of prosecution are included in federal criminal sentences pursuant to different statutes. Criminal fines are imposed pursuant to 18 U.S.C. §§ 3571 and 3572.[8] The costs of prosecution imposed as part of

Ryan's sentence were imposed pursuant to 28 U.S.C. § 1918(b).

Fines and costs are not treated as fungible in federal criminal proceedings. *See, e.g., United States v. Bevilacqua,* 447 F.3d 124, 127 (1st Cir.2006):

There are several distinctions important to our analysis. The imposition on a defendant of the costs of a special prosecutor is different from ordering a defendant to pay criminal fines. Costs are paid to the entity incurring the costs; criminal fines are generally paid to a special fund for victims' compensation and assistance in the U.S. Treasury. *See* 42 U.S.C. 10601(a), (b); *United States v. Sun Growers of Cal.,* 212 F.3d 603, 606 (D.C.Cir.2000).

*Cf. United States v. Gering,* 716 F.2d 615, 623–26 (9th Cir.1983) (applying different statutory frameworks for analysis of criminal restitution and costs of prosecution awards).

In *United States v. Ducharme,* 505 F.2d 691 (9th Cir.1974), the Ninth Circuit affirmed a conviction for intentionally supplying false information on income tax withholding exemption certificates but re-

---

**7.** *See, e.g.,* 140 Cong. Rec. H S14597–02 (Oct. 7, 1994):

The Bankruptcy Act closes another gap that permitted white collar crooks and others to hide behind bankruptcy protections to avoid payment of criminal fines. As individuals have misused the bankruptcy process to avoid debt collection and foreclosure, so have persons convicted of crimes sought to shield themselves from the payment of court-imposed fines triggered by criminal activity. My proposal ... removes this shield and creates continued liability for the payment of criminal fines even if bankruptcy is pursued.

**8.** 18 U.S.C. § 3571 provided at the time Ryan was sentenced as follows:

(a) In general. A defendant who has been found guilty of an offense may be sentenced to pay a fine.

(b) Authorized fines. Except as otherwise provided in this chapter, the authorized fines are—
(1) if the defendant is an individual—
(A) for a felony, or for a misdemeanor resulting in the loss of human life, not more than $250,000;
(B) for any other misdemeanor, not more than $25,000; and
(C) for an infraction, not more than $1,000; and
(2) if the defendant is an organization—
(A) for a felony, or for a misdemeanor resulting in the loss of human life, not more than $500,000;
(B) for any other misdemeanor, not more than $100,000; and
(C) for an infraction, not more than $10,000. 18 U.S.C. § 3572, among other things, specifies the factors to be considered in imposing a fine.

versed the sentence imposed. The sentence required as a condition of probation that the appellant pay a $500 fine plus costs of prosecution. The court held that 26 U.S.C. § 7205, the statute under which the appellant was convicted, did not authorize the assessment of costs in addition to a fine. *Id.* at 692. The subject statute provided that upon conviction for an offense thereunder, the offender would be subject to a fine up to $500, imprisonment for up to one year, or both, "in lieu of any other penalty provided by law." *Id.* at 692 n. 1. Accordingly, the decision in *Ducharme* effectively recognizes that an award of costs against the defendant in a criminal case constitutes a "penalty" but also clearly differentiates the costs of prosecution from a criminal fine.

In dictum, the court in *Ducharme* noted that since the maximum fine for the subject offense was $500, the amount of the fine imposed on appellant, "the assessment of costs of prosecution is tantamount to increasing that fine." *Id.* at 692. In *Gering*, 716 F.2d at 625–26, the Ninth Circuit rejected the *Ducharme* dictum, as extended in *United States v. Taxe*, 540 F.2d 961, 970 (9th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977), and affirmed an award of costs of prosecution under 28 U.S.C. § 1918(b) in addition to fines in the maximum amount of $1,000 each, assessed on 23 of the 24 counts of mail fraud on which the defendant-appellant was convicted. "Decisions from other circuits persuade us that the dictum in *Taxe* [and hence, in *Ducharme]* was unwarranted." *Id.* at 626.

■ Definitions or interpretations of terms under other relevant federal statutes are useful to inform our interpretation of such terms, used but not defined in the Bankruptcy Code. *See, e.g., Patterson v. Shumate*, 504 U.S. 753, 757–60, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Considering the term "criminal fine" as it is used in federal criminal law strongly suggests that it does not cover "costs of prosecution," and we conclude that the chapter 13 exception to discharge for "restitution, or a criminal fine" does not extend to costs of prosecution assessed pursuant to 28 U.S.C. § 1918(b).

The exception to discharge in chapter 7 included in § 523(a)(7) has been interpreted since *Kelly* to cover costs of prosecution imposed as part of a criminal sentence, whether they are considered as a "fine, penalty, or forfeiture," but the language of § 1328(a)(3) is different. By its terms, it provides a more limited exception to discharge in chapter 13, one that we determine does not encompass costs of prosecution imposed as part of a criminal sentence.

To honor the principle that exceptions to discharge are to be construed narrowly in favor of debtors, particularly in chapter 13, where a broad discharge was provided by Congress as an incentive for debtors to opt for relief under that chapter rather than under chapter 7, it is not appropriate to expand the scope of the § 1328(a)(3) exception beyond the terms of the statute. Congress could have adopted an exception to discharge in chapter 13 that mirrored § 523(a)(7). It did not do so. In contrast, under BAPCPA, when Congress wanted to limit the chapter 13 "superdischarge," it incorporated exceptions to discharge from § 523 wholesale. *See* current § 1328(a)(2), excepting from the chapter 13 discharge any debts of the kinds specified in subsections (1)(B) and (C), (2), (3), (4), (5), (8) and (9) of § 523(a).

■ As a bottom line matter, Ryan served his time and paid in full the criminal fine that was imposed as part of his sentence for conviction of possession of an

unregistered firearm.[9] The restitution obligation that was included as part of his sentence was voided. Ryan paid the Government a total of $6,331.66 to be applied to the costs of prosecution awarded as part of his criminal judgment, including $2,774.89 paid under his chapter 13 plan, leaving a balance of $77,088.34. We determine that the unpaid balance of the costs of prosecution award was covered by Ryan's chapter 13 discharge.

## VI. CONCLUSION

Based on the foregoing analysis, we conclude that the exception to discharge included in § 1328(a)(3) for "restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime" does not cover costs of prosecution included in such a sentence, and we REVERSE.

MARKELL, Bankruptcy Judge, dissenting:

I respectfully dissent.

This case requires us to determine what Congress intended in 1994 when it exempted "criminal fines" from the chapter 13 discharge. Specifically, we must decide whether that phrase covers court-ordered and statutorily authorized reimbursement of costs related to prosecuting a debtor for a federal crime.

The majority spends a great deal of time and analysis essentially holding that the rehabilitative and redemptive goals of bankruptcy require a narrow construction of "criminal fines." I think it is more likely that Congress intended that bankruptcy courts construe the term in the Bankruptcy Code in the same way that other courts construe it in the Criminal Code.

As noted in *Collier on Bankruptcy:* "To determine whether a particular fine is dischargeable under section 1328(a)(3), an examination of applicable criminal law will often be necessary." 8 COLLIER ON BANKRUPTCY ¶ 1328.02[3][j] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2008). *See also Bova v. St. Vincent DePaul Corp. (In re Bova)*, 276 B.R. 726, 731–32 (1st Cir.BAP2002) (examining Illinois and California criminal law to determine whether civil enforcement of restitution judgment affected the judgment's status as criminal restitution).

If that proposition is accepted, *United States v. Gering*, 716 F.2d 615, 626 (9th Cir.1983); *United States v. Taxe*, 540 F.2d 961, 970 (9th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977); and *United States v. Ducharme*, 505 F.2d 691, 692 (9th Cir.1974) (per curiam) demonstrate that, in this circuit, costs of reimbursement count as criminal fines.[10]

Although reasonable minds might differ, I think treating reimbursement costs as criminal fines within § 1328(a)(3) is a more

---

**9.** The judgment reflects that interest on the $7,500 fine was waived because the court determined that "the defendant does not have the ability to pay interest."

**10.** The majority cites *Gering* in an attempt to distinguish *Ducharme*. One cannot quibble with the quotations used by the majority; they are accurate. But the context is off. *Gering* dealt with whether costs could be imposed under 28 U.S.C. § 1918(b) if the text of the statute setting for the substantive crime did not refer to costs. Distinguishing *Ducharme*

on the basis that it did not construe § 1918(b), the circuit held that "unless the statute under which a defendant is convicted provides otherwise, a district court may in its discretion impose costs of prosecution under section 1918(b) on non-indigent defendants." *Gering* at 626. With all due respect to the majority, that holding does nothing to *Ducharme's* and *Taxe's* indications that, for sentencing purposes, costs of prosecution are treated as criminal fines.

natural reading of that section, and, given the history behind the 1994 amendment that added "criminal fine" to § 1328(a)(3), the reading that Congress likely intended. I therefore dissent.